**UNITED STATES of America, Appellee,**

v.

**Anthony PIPOLA, Defendant–Appellant.**

**No. 490, Docket 95–1264.**

United States Court of Appeals, Second Circuit.

Argued Nov. 21, 1995.

Decided April 29, 1996.

John L. Pollok, New York City (Michael S. Pollok, Daniel E. Katcher, Hoffman & Pollok, New York, New York, of counsel), for Defendant–Appellant.

Mark W. Lerner, Assistant United States Attorney, Brooklyn, New York (Zachary W. Carter, United States Attorney, Emily Berger, Assistant United States Attorney, Eastern District of New York, Brooklyn, New York, of counsel), for Appellee.

Before: CARDAMONE, WALKER, and PARKER, Circuit Judges.

CARDAMONE, Circuit Judge:

Defendant Anthony Pipola appeals from a May 4, 1995 judgment entered in the Eastern District of New York following a jury trial before United States District Judge Sterling Johnson convicting him of a robbery conspiracy to obstruct commerce in violation of 18 U.S.C. § 1951(a) (1994) (count one), of aiding and abetting the obstruction of commerce by means of a robbery in violation of 18 U.S.C. §§ 2(a), 1951(a) (counts two and four), and of aiding and abetting the use or carrying of a firearm during a crime of violence in violation of 18 U.S.C. §§ 2(a), 924(c)(1) (counts three and five). He is presently serving concurrent 97–month prison sentences for the robbery and conspiracy counts and consecutive terms of 60 months and 240 months for each of the firearms charges. The total term of imprisonment is 397 months.

The principal issue for us to decide is whether the defendant's conviction for aiding and abetting the use and carrying of a firearm during a crime of violence should be affirmed. That is, we must decide whether Pipola acted simply as a cheerleader, egging on his co-conspirators to commit the robberies, or whether he actively assisted the other defendants in their use of firearms during the crimes they committed after leaving his house all-armed, so that his assistance facilitated the successful achievement of this additional offense. We conclude that Pipola performed the latter, not the former, role. Hence, we affirm.

## FACTS

### A. *The Two Robberies*

The charges against defendant and six other defendants arose in connection with two armed robberies, one on September 21 and the other on September 26, 1992, during which cash and checks were taken from employees of Anchor Armored Delivery, Inc. (Anchor). The earlier robbery took place outside the Dubovsky & Sons warehouse on Otto Road in Glendale, a neighborhood in Queens County, New York. The later crime occurred at Citibank on Metropolitan Avenue, in Ridgewood, Queens.

### 1. *Early Failures*

In the summer of 1992, before the September robberies occurred, Pipola suggested to some of his co-conspirators the possibility of robbing armored vehicles. After two scouting trips to observe the Dubovsky & Sons location, Pipola and several of the other defendants went to the warehouse in two cars. During that visit, Pipola slightly modified the robbery plan and, in anticipation of the appearance of the armored vehicle, handed a pistol to co-conspirator James Loizzo. That

robbery attempt was aborted when the armored vehicle failed to appear.

Pipola then enlisted defendant Steven Small's help in late August 1992 for a planned robbery at the Metropolitan Avenue office of Citibank. Small testified that his role was "to supply a getaway car, a gun, a police scanner, and walkie-talkies." When Pipola also asked Small if he had any friends who would participate, Small recruited defendant Thomas Donohue.

When—in accordance with Pipola's instructions—Small, Donohue, and Donohue's brother went to Pipola's house in early September, Small spoke with Pipola privately and was told to follow defendant Don Louis "Dominick" Martorella to the bank on Metropolitan Avenue, where he and Martorella were to wait in a pre-arranged location. The plan was for the Donohues to lie in wait close to the bank and intercept the guards once they exited the armored truck. Small gave Donohue a .22 caliber pistol to use in the hold-up. Because Martorella and Small chose the wrong spot, they did not see the armored truck arrive and the four defendants were forced to return to Pipola's residence empty-handed. A similar attempt by Small and the Donohue brothers to rob the bank was equally unsuccessful.

## 2. Dubovsky Warehouse Robbery

Meanwhile, Pipola, undeterred by the earlier failed attempt to rob the armored vehicle at the Dubovsky & Sons warehouse, brought defendants Loizzo, Small, Donohue, and Martorella together at his house to discuss that target. During the discussions Small was told that he was to play the same role as he had for the aborted Citibank robbery—supplying a gun, scanner, and walkie-talkies, and bringing Donohue. When the group convened at Pipola's residence on September 20, it was decided that the robbery would take place the next day. Donohue arrived at Small's house on the day of the robbery and picked up two pistols: a .22 caliber pistol belonging to Small and Donohue's own .380 caliber pistol. After purchasing walkie-talkies, Small met Donohue, Loizzo, James Rogers, and Martorella at a McDonald's restaurant. Martorella and Loizzo had just come

from Pipola's house, where they had discussed the plan with Pipola. The entire group then proceeded in two cars to the Dubovsky warehouse.

Loizzo testified that he and Donohue, wearing ski masks and brandishing guns, robbed the Anchor guards upon their arrival at the warehouse. Defendant Rogers, who also wore a mask, took the bag of money from one of the guards. Small and Martorella waited in other vehicles near the scene. Loizzo, Martorella, and Rogers went from the scene of the robbery to Pipola's house where Pipola opened the bag and distributed shares of the crime's proceeds to the participants. Small and Donohue also returned to Pipola's place that day and discussed the robbery, and later collected their share of the stolen money from Martorella.

## 3. Citibank Robbery

On September 25, 1992 Small and Donohue again went to Pipola's house, where they met with Pipola and Martorella to discuss the Citibank robbery. Small and Martorella were to take up positions in their vehicles near the bank; Donohue and Rogers were to wait near the deposit box. Small testified that although he was supposed to supply a gun, the others still had his gun from the September 21 robbery. Pipola, Martorella, Small, Donohue, Rogers, and Mark Jacobowitz met on the day of the Citibank robbery and finalized the plan. According to defendant James Rogers' testimony at trial, Pipola told the others that Jacobowitz—a Pipola associate who had not previously been involved—"was just going to drive around, more or less keep tabs on everybody and make sure everything [went] okay." After Pipola ascertained that everyone was ready, the other defendants left Pipola and drove to Metropolitan Avenue in three different vehicles, including a stolen getaway car. Shortly after the robbers took up their positions, the armored vehicle appeared. Rogers and Donohue approached the two guards, pointing their weapons. After disarming one of the guards, they took a bag of money and escaped.

Following the commission of this crime, Small picked up Rogers and Donohue and brought the money to Pipola, who again di-

vided the proceeds into shares for the various defendants. A few days later, several of the conspirators met twice at Pipola's house, drinking first to "a job well done" and later receiving a warning from Pipola not to spend the money or talk about the robberies.

### B. *The Arrests, Trial, and Conviction*

Fingerprints taken from the getaway car abandoned after the Dubovsky robbery led to the identification of defendant James Rogers. James Loizzo then became a confidential informant. The other conspirators were thereafter arrested and charged. The six co-conspirators—Loizzo, Rogers, Small, Donohue, Martorella, and Thomas Nocella—entered guilty pleas. Pipola stood trial and was convicted before a jury.

At trial, cooperating witnesses Small, Loizzo, and Rogers described the roles of the participants, including Pipola, as explained earlier. The government also produced the Anchor employees who witnessed the crimes, tapes of conversations in which Pipola incriminated himself, and telephone records reflecting communications between the conspirators. Jose Ledesma, an Anchor guard, testified that on September 21, 1992 he was attacked by three men as he exited the Dubovsky & Sons warehouse. Two of the assailants threatened him and his partner with guns, and took a bag containing checks and cash. Jose Lugo, another Anchor guard, described the September 26 robbery, stating that two men armed with handguns forcefully took currency that he and his partner were delivering to Citibank.

Pipola was convicted of all five counts. On appeal he contends the jury was improperly charged with respect to the aiding and abetting the use or carrying of firearms, the evidence produced against him was insufficient to support his convictions on those counts, and the trial court erred in admitting evidence of previous transactions involving him and his co-conspirators. We discuss each of these contentions in order.

### DISCUSSION

#### I The Contested Jury Charge

##### A. *Charge of Aiding and Abetting*

 It is Pipola's argument that the jury instruction with respect to aiding and abetting the use or carrying of a firearm was inconsistent with the rule laid down in *United States v. Medina*, 32 F.3d 40 (2d Cir. 1994). Because Pipola did not object at trial to the charge he now challenges on appeal, his only hope for relief is in Rule 52(b) of the Federal Rules of Criminal Procedure, the "plain error" rule. But our authority to reverse for errors not urged to the trial court is narrow indeed. *See United States v. Olano*, 507 U.S. 725, 731–32, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993). First, of course, there must be an error; absent a valid waiver by defendant, a trial judge's deviation from a legal rule is considered an error. *Id.* at 732–33, 113 S.Ct. at 1776–77. Second, the error must be plain, that is, one obviously wrong in light of existing law. *Id.* at 734, 113 S.Ct. at 1777–78. Third, the error must have affected the defendant's substantial rights, which ordinarily means that it must have prejudiced him. *Id.*

The challenged instruction was as follows:

In Counts Three and Five the defendant is also charged with aiding and abetting, counseling, commanding, inducing or procuring the offense of carrying a firearm a [*sic*] crime of violence.

.... I have already instructed you, in connection with the crimes charged in Counts Two and Four, on the requirements for finding a defendant guilty as an aider and abettor.

.... I instruct you that to find a defendant guilty as an aider and abettor of Counts Three and Five, you must find beyond a reasonable doubt that the defendant had knowledge that a firearm would be used or carried during and in relation to the crimes charged in Counts Two and Four.

Before giving this charge, the trial judge had instructed the jury regarding the counts of aiding and abetting the robberies (counts two and four), explaining, in substance, that the government must prove beyond a reasonable doubt that someone other than the defendant committed the robberies and that the defendant aided and abetted the commission of such underlying crime.

The trial court went on to state that the defendant must have knowingly and willfully facilitated or encouraged the commission of the crime by some act or omission, and that the "mere presence of the defendant at the scene of a crime or acquiescence ... in the criminal conduct of others, even coupled with the knowledge that the crime is being committed, is not sufficient to establish aiding and abetting." It also set forth the substantive requirements for liability under 18 U.S.C. § 924(c) for using or carrying a firearm in relation to a crime of violence.

## B. Law of Aiding and Abetting

■ Under the terms of 18 U.S.C. § 2(a) (1994), "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." To be convicted of aiding and abetting, the defendant must have taken some conscious action that furthered the commission of the underlying crime. See United States v. Dickerson, 508 F.2d 1216, 1218 (2d Cir.1975). The government must therefore prove the underlying crime was committed by someone other than the defendant and that the defendant himself either acted or failed to act with the specific intent of advancing the commission of the underlying crime. See United States v. Labat, 905 F.2d 18, 23 (2d Cir.1990).

■ To show specific intent the prosecution must prove the defendant knew of the proposed crime—suspicion that it might occur is not enough—and had an interest in furthering it. See United States v. Wiley, 846 F.2d 150, 154 (2d Cir.1988). In sum, to prove the act and intent elements for aiding and abetting the commission of a crime, the evidence must demonstrate that the defendant joined and shared in the underlying criminal endeavor and that his efforts contributed to its success. See United States v. Zambrano, 776 F.2d 1091, 1097 (2d Cir.1985).

The crime underlying counts three and five in the present case is a violation of 18 U.S.C. § 924(c): "[w]hoever, during and in relation to any crime of violence ... uses or carries a firearm" commits a crime. Robbery is a "crime of violence" under the statute. See § 924(c)(3). In Medina we addressed the specific question of whether a defendant's knowledge that a gun will be used in the underlying offense is alone sufficient to support a conviction for aiding and abetting a violation of § 924(c). We held that it is not. Medina, 32 F.3d at 46. Roberto Medina had recruited one Lopez to rob Medina's former employer, and Lopez enlisted the assistance of two other persons. In arguing that this evidence was sufficient to support an aiding and abetting charge against Medina, the government relied on proof that Medina in a discussion with Lopez referred to the robberies as "stickups," offered to supply Lopez with a gun, and actually gave Lopez a revolver before the robbery. Id. at 45.

Because aiding and abetting requires a defendant's conscious assistance in the commission of the specific underlying crime, we held that none of the actions taken by Medina was sufficient. Id. There must be proof, we said, that the defendant's actions directly facilitated or encouraged either the use of or the carrying of a firearm. Hence, although Medina knew that a gun would be used in the robbery, there was no evidence he prompted or induced such use. Id. The gun he supplied was never used because Lopez, who was a confidential informant, actually gave the firearm to a government agent before the robbery was attempted. Id. at 43, 45. Even though Lopez' recruits carried guns during the robbery's commission, no evidence suggested that Medina promoted their use. Because the accomplices' use of those guns was "a foregone conclusion" and they were not told of Medina's offer to supply a gun, Medina could not be guilty of facilitating or encouraging their use. Id. at 46.

## C. Review of Instant Jury Charge

■ The jury instructions in the present case, though not a model of clarity, correctly track the law set forth in Medina. In evaluating a challenge to a jury instruction, an appellate court must focus first on the specific language of the charge. See California v. Brown, 479 U.S. 538, 541, 107 S.Ct. 837, 839, 93 L.Ed.2d 934 (1987); United States v. Coyne, 4 F.3d 100, 113 (2d Cir. 1993), cert. denied, —— U.S. ——, 114 S.Ct. 929, 127 L.Ed.2d 221 (1994). To determine if

the challenged instruction passes muster, the reviewing court must next examine the entire charge to see if—looked at as a whole—it conveyed to the jury a correct view of the law. *Brown,* 479 U.S. at 541, 107 S.Ct. at 839. When jury instructions are susceptible to more than one possible interpretation, our task is to determine whether there is a reasonable likelihood that the jury applied them in a way that deprived defendant of his rights. *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 1197–98, 108 L.Ed.2d 316 (1990); *see Estelle v. McGuire,* 502 U.S. 62, 72 & n. 4, 112 S.Ct. 475, 482 & n. 4, 116 L.Ed.2d 385 (1991) (reaffirming *Boyde* standard as a "single standard of review for jury instructions"); *United States v. Birbal,* 62 F.3d 456, 462 (2d Cir.1995) (applying "reasonable likelihood" standard to direct review of federal conviction).

Defendant urges that the charge as given was in error because it instructed the jury that Pipola could be guilty simply because he knew that a firearm would be used or carried during the two robberies. More particularly, he maintains that the instruction omitted the requirement of an act directly promoting the firearms violation, as opposed to an act merely promoting the general criminal endeavor. *See Medina,* 32 F.3d at 45. Pipola further asserts that his counsel's failure to object to the instruction at the trial should be excused because a supervening decision—*Medina*—changed the law of this Circuit. We reject these arguments.

▇ The trial court concededly instructed the jury—with respect to counts three and five—that knowledge that a gun would be used was necessary to establish liability as an aider and abettor. However, nowhere in the instructions did the district court charge that knowledge alone was sufficient. It explained that in evaluating those counts the jury must apply the general aiding-and-abetting instructions given with respect to the two counts of aiding and abetting the obstruction of commerce by robbery (counts two and four). These instructions correctly required the jury to find that someone committed the underlying crime—in the case of counts three and five, the relevant § 924(c) firearms offense—and that defendant knowingly facili-

tated the commission of the offense by some act or omission. In addition, the jury was specifically cautioned that defendant's presence at the crime scene or his acquiescence in the criminal conduct of others, even joined with knowledge that the crime would be committed, would not support a conviction for aiding and abetting.

Although when viewed in isolation, the instruction setting forth the knowledge requirement did not state the elements of aiding-and-abetting completely, we think the instructions as a whole "delivered a correct interpretation of the law." *Brown,* 479 U.S. at 541, 107 S.Ct. at 839. Defendant's argument takes the instruction that knowledge is required out of context and ignores the fact that the general instructions were explicitly incorporated into the charge. In addition to knowledge that a firearm will be used, *Medina* simply requires that there be an act or omission promoting the use of the firearm. The trial court's instructions effectively communicated this requirement.

In our recent decision in *United States v. Masotto,* 73 F.3d 1233 (2d Cir.1996), a defendant convicted of robbery appealed his conviction of aiding and abetting the carrying or use of a firearm. Masotto argued, as does the defendant here, that the trial court erroneously instructed the jury that liability could be based on " 'mere knowledge' that members of the crew might use firearms without proof that [the defendant] 'performed some act that directly facilitated or encouraged the use or carrying of a firearm.' " *Id.* at 1240 (citing *Medina,* 32 F.3d at 45). We turned this challenge aside, holding that the general instructions on liability as an aider and abettor required the jury to find more than knowledge: the jury was required to find that all the elements of the underlying firearms offense were committed by some person and that the defendant participated in the commission of the offense. *Id.* at 1240. The instant case is indistinguishable from *Masotto.* Read as a whole, the instructions effectively explained that the defendant must have directly facilitated the commission of the firearms offense. Therefore, there is no reasonable likelihood that

the conviction was based on an erroneous view of the law.

Defendant thinks plain error review should be less stringent in the present case because an intervening decision changed settled law of this Circuit. *See United States v. Viola*, 35 F.3d 37, 41–42 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995). In such cases, it is the government that has the burden of showing that defendant's substantial rights were not affected. *Cf. Olano*, 507 U.S. at 732–34, 113 S.Ct. at 1777 ("We need not consider the special case where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified."). Defendant believes that *Medina* changed—or at least clarified—the requisite elements of aiding and abetting a violation of § 924(c). However, because in our view the jury instructions in the case at hand did not constitute error, we need not reach the prejudice component of the plain error inquiry.

## II Sufficiency of the Evidence

Pipola next avers that the evidence was insufficient to support liability for aiding and abetting the carrying or use of a firearm in connection with a crime of violence. A defendant challenging the sufficiency of the evidence bears a heavy burden because in reviewing such a claim, the evidence is viewed in the light most favorable to the prosecution, *see Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469–70, 86 L.Ed. 680 (1942), and reasonable inferences and credibility determinations are to be drawn in its favor. *See United States v. LaPorta*, 46 F.3d 152, 162 (2d Cir.1994). When the evidence, viewed in this light, may be said to convince any rational trier of fact that the defendant is guilty beyond a reasonable doubt, the conviction must be upheld. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Stanchich*, 550 F.2d 1294, 1299 (2d Cir.1977) (Friendly, J.).

Here the evidence was sufficient to convict Pipola of aiding and abetting the use of a firearm in connection with both robberies. We are unable to agree with defendant's suggestion that the evidence in his case was weaker than that in *Medina*. In *Medina*, 32 F.3d at 42, the proof was found insufficient because it did not show an "act that specifically aided and abetted the use or carrying of a gun during the attempted robbery" and because Medina's plans for the robbery did not include a gun that was actually carried or used. In the instant case, however, the proof permitted the jury to infer that Pipola specifically encouraged the use of firearms in the robberies.

Co-conspirator Small's testimony concerning the August 1992 conversation—during which Pipola recruited him for the Citibank robbery—allowed the jury to conclude that Pipola delegated to Small the task of providing a gun. Small recounted how he was told to play the same role, including the delivery of a gun, for the Dubovsky robbery, and said that his role in the latter robbery was discussed at Pipola's house. Because there was considerable evidence that Pipola made planning decisions as the leader of the group, the jury was entitled to infer that it was defendant's aim to encourage Small to make a gun available when the crimes were committed. Moreover, Small testified that he discharged his assigned task by arming Donohue, one of the gunmen, on the morning of the September 21 robbery. As a result, Pipola's acts related directly to the firearm that was actually used in the first robbery.

Pipola further insists that the evidence regarding the second robbery is insufficient, even if the count of aiding and abetting the use of a firearm in the first robbery is upheld. Again, the testimony permitted the inference that Pipola, relying on a tip from Martorella, devised a plan to rob an armored truck at Citibank's Metropolitan Avenue office. That plan, as evidenced by the conversation in which Pipola assigned to Small the role of providing a weapon, included the carrying of firearms by the participants. By giving Small the task of supplying a gun, Pipola "acted ... with the specific purpose of bringing about the underlying crime." *Labat*, 905 F.2d at 23. The proof showed that Donohue, instead of returning Small's .22 caliber pistol after the Dubovsky robbery, retained it for the Citibank robbery. Pipola's actions placing Small in charge of arming

Donohue demonstrated that he "joined the venture, shared in it, and that his efforts contributed towards its success." *Zambrano,* 776 F.2d at 1097.

Pipola now argues that there was no proof that he directly assisted in the use of the guns, gave weapons to the gunmen, or allowed weapons to be exchanged at his house. This argument mistakenly assumes that the only way to aid another's use of a gun is to deliver it personally. Instead, under 18 U.S.C. § 2 and § 924(c), all that is required to prove aiding and abetting is some act directly facilitating or encouraging the use or carrying of a firearm, as opposed to only having knowledge that a firearm will be used in the robbery. The evidence in the present case was sufficient for such purposes: Pipola designed the plans for two robberies and these plans, including the use of firearms, were effectuated through the acts of his co-conspirators.

Defendant's heavy reliance on *Medina* is misplaced. There the weapon supplied by Roberto Medina was given to a detective before the attempted robbery; here the pistols supplied by Small at the instigation of Pipola were used during the commission of the crimes. Medina only knew a co-conspirator would carry a gun; here there was proof Pipola acted to encourage the carrying of guns by his co-conspirators. In *Medina,* the use of a gun was a foregone conclusion, whereas in the present case using guns was an idea originated by defendant. The proof at trial demonstrated that Pipola discussed the robberies with the persons who carried them out, assigned particular roles to the various participants, and actively assisted (through Small) in the carrying and use of firearms. In short, Pipola failed to show the evidence was insufficient.

### III Evidence of Other Wrongs

■ The final issue defendant raises is whether the trial court improperly admitted evidence of crimes other than those charged, in contravention of Rule 404(b) of the Federal Rules of Evidence. The challenged evidence consisted of testimony by James Loizzo and Steven Small, Pipola's co-conspirators who cooperated with the government. The trial court made a pretrial ruling on the admissibility of proffered evidence of other crimes aimed to show Pipola's involvement in the following activities with his co-conspirators: making various loans and collecting debts, committing crimes including armed robberies and a burglary, and using and selling stolen and counterfeit credit cards. Judge Johnson ruled that such evidence was relevant because it helped explain the background of the conspiracy and the development of the relationships between defendant and the other conspirators; he also ruled that its probative value was not outweighed by the possibility of unfair prejudice.

At the trial, Loizzo testified that in 1989, when he and Pipola first met, Pipola agreed to loan him money to cover a debt to a drug dealer. Shortly thereafter, Loizzo stated, he began to give Pipola "tips" about potential robbery or burglary targets. Loizzo averred that before he knew Pipola very well, Pipola, acting on a tip, arranged a burglary. Loizzo also declared that he and Pipola attempted to rob a drug dealer and burglarize a house, all to no avail, but that Loizzo "earned some respect" from Pipola when he finally deduced the location of the dealer's cache.

Pipola also complains of testimony by Loizzo, along with tape-recorded conversations, suggesting that Pipola and his co-conspirators made usurious loans. In addition, defendant cites an instance where Loizzo testified that Pipola sought information about drug dealers to rob. Moreover, Pipola asserts that Small was improperly allowed to testify that he, Loizzo, Pipola, and others in 1991 robbed a warehouse in which marijuana was being grown.

■ Under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but such evidence may be admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Our inclusionary interpretation of the rule allows evidence of other wrongs to be admitted so long as it is relevant and it is not offered to prove criminal propensity. *See, e.g., Berkovich v.*

*Hicks,* 922 F.2d 1018, 1022 (2d Cir.1991). One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case, *United States v. Lasanta,* 978 F.2d 1300, 1307–08 (2d Cir. 1992). Such proof may also be used to help the jury understand the basis for the co-conspirators' relationship of mutual trust, *see United States v. Rosa,* 11 F.3d 315, 334 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994).

When the government seeks to introduce such extrinsic evidence, the trial court must first determine whether it is admissible under Rule 404(b). If so, it must then determine whether the probative value of the evidence is substantially outweighed by the risk of unfair prejudice. *See* Fed. R.Evid. 403. If the evidence is ruled admissible, the trial court, when the defendant so requests, must give a limiting instruction. *See* Fed.R.Evid. 105. Broad discretion resides in the district court regarding the admissibility of evidence of extrinsic acts, *see Berkovich,* 922 F.2d at 1022, and such rulings are reversed only for a clear abuse of discretion. *See United States v. Sappe,* 898 F.2d 878, 880 (2d Cir.1990). To find such an abuse we must be persuaded that the trial judge ruled in an arbitrary and irrational fashion. *See United States v. Pitre,* 960 F.2d 1112, 1119 (2d Cir.1992).

The district court did not abuse its discretion in the present case. In its pretrial ruling and at various times during the trial, it ruled the evidence was relevant as background information to make the story of the crimes charged complete and to enable the jury to understand how the illegal relationship between the co-conspirators developed. The government undertook to show that Pipola played a leadership role in organizing two armed robberies involving a number of other individuals, each of whom performed assigned functions. The evidence of prior illicit activities involving Pipola and his co-conspirators explained to the jury how the relationship between Pipola and his underlings evolved. The challenged testimony made the 1992 conspiracies to commit armed robberies, in which Small and Loizzo also played key parts, more plausible.

This evidence was relevant and was offered for a purpose other than to show propensity, and it therefore cannot be said to be an abuse of discretion to rule it admissible under Rule 404(b). Nor can we see any reason to disturb the ruling that the evidence was not unduly prejudicial. In addition to considering the prejudicial impact of the evidence before the trial, the trial judge delivered limiting instructions when the defendant's counsel so requested, warning the jury not to infer from the evidence of other crimes that Pipola was guilty of the conspiracy, the robberies, or the firearms charges. *See* Fed. R.Evid. 105. In short, the district court's rulings under Rule 404(b) provide no basis for overturning Pipola's convictions.

## CONCLUSION

Accordingly, for the reasons stated, the judgment of the district court is affirmed.