**UNITED STATES of America,**
**Appellee,**

v.

**Paul Okechukwu EZEH, Defendant–**
**Appellant.**

**No. 03–1092.**

United States Court of Appeals,
Second Circuit.

April 25, 2003.

Mark J. Stein, Fried, Frank, Harris, Shriver & Jacobson, New York, New York, for Appellant.

E. Danya Perry, Assistant United States Attorney, for James B. Comey, United States Attorney for the Southern District of New York (Gary Stein, Assistant United States Attorney), for Appellee, of counsel.

PRESENT: CALABRESI, F.I. PARKER, and SACK, Circuit Judges.

## *SUMMARY ORDER*

**THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 25th day of April, two thousand and three.

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED that the sentence of the district court is hereby AFFIRMED.

Defendant–Appellant Ezeh was convicted after a jury trial for conspiracy to commit wire fraud in violation of 18 U.S.C. § 371. He was charged with aiding Emmanuel Eke Ufomaduh in perpetuating the fraud. The scheme at issue involved convincing the victim of the fraud, Bobbie Jean Chavez, that a Nigerian lawyer was seeking to settle the estate of a deceased Nigerian couple. Because, Chavez was

told, the last name of the deceased couple was also Chavez, the lawyer desired to give the proceeds of the estate, $6 million in the instant case, to Chavez on the understanding that they would then split the money. Chavez, who thought the couple may have been relatives of her husband, was lured by the perpetrators of the fraud to New York for the supposed purpose of identifying herself to a "security company." En route, Chavez and her husband became suspicious, and, soon after arriving in the city, they alerted the Secret Service.

At a meeting in a New York restaurant between Ufomaduh, Chavez, and a Secret Service agent posing as Chavez's husband, Ufomaduh explained what would be required to complete the transaction. In an effort to avoid detection by customs officers, Ufomaduh explained, the money would be coated in a black substance before being sent from Nigeria. It was therefore necessary to "clean" the money using special solvents. Ufomaduh informed Chavez and the agent that he needed $5,500 from them to perform this service.

The evidence at trial established, *inter alia*, that Ezeh knew Ufomaduh, that he had probably driven Ufomaduh to the restaurant, that he entered the restaurant before Ufomaduh, that he exited after spotting the victims and then used his cell phone before crossing the street and watching the restaurant while the meeting took place. Ezeh claims that he had no knowledge of the transaction that occurred inside the restaurant.

On appeal Ezeh challenges the decision of the district court to allow evidence, chiefly in the form of a stipulation, that he had previously pleaded guilty to a charge that he had participated in a "virtually identical ... black money conspiracy" in Maryland in 1997. The judge gave a limiting instruction to the jury, both when the stipulation was read and before the jury began deliberations, instructing the jury not to infer Ezeh's guilt from the fact of the prior conviction and that the evidence "should be considered only with regard to Defendant Paul Ezeh's intent and knowledge with respect to the conspiracy charged here."

Ezeh argues that it was error to admit the evidence of his prior conviction (a) because, although similar to the charged fraud, the prior conviction was not shown to be relevant to the issue at trial, namely Ezeh's knowledge of the scheme, and was therefore not admissible under Federal Rule of Evidence 404(b), and (b) because the probativeness of the prior conviction was outweighed by the substantial risk of unfair prejudice, exclusion of the evidence was required under Federal Rule of Evidence 403.

■ We cannot say that the district court abused its discretion, *see United States v. Tubol*, 191 F.3d 88, 95 (2d Cir. 1999), in admitting this evidence. Under Rule 404(b), evidence of a prior similar act may be admitted to prove a defendant's knowledge of the current act if the government can "identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act." *United States v. Garcia*, 291 F.3d 127, 137 (2d Cir.2002).

Ezeh was charged with being a participant in a black money scheme that, in the words of Ezeh's trial counsel, was "as similar as [it] could possibly be" to the prior black money scheme. Ezeh's *role* was different in the instant case from that which he played in the prior situation, and the amounts involved were different. But, even with these variations, the sheer improbability of Ezeh's innocent participation in a black money scheme that was virtually identical to one in which he had participat-

ed a few years earlier makes the evidence of that prior act highly probative in assessing Ezeh's knowledge of the charged scheme. *See United States v. Klein,* 340 F.2d 547, 549 (2d Cir.1965).

The degree of similarity required between a past act and the act of which a defendant stands accused, while always high, depends on the theory of relevancy under which the evidence of the prior act is offered. Here, where the relevance of the prior act is primarily in the tendency of the fact of the prior act to "eliminate[ ] the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain" each act, *id., quoting* 2 Wigmore, Evidence § 302, the level of similarity needs to be very high. We are, however, satisfied that in the instant case the prior act is sufficiently similar to the charged act to meet this standard, and therefore do not find an abuse of discretion by the district court in not excluding the evidence on 404(b) grounds. *See United States v. Pipola,* 83 F.3d 556, 566 (2d Cir.1996) ("Broad discretion resides in the district court regarding the admissibility of evidence of extrinsic acts, and such rulings are reversed only for a clear abuse of discretion." (internal citation omitted)).

■ Nor are we persuaded by Ezeh's argument that the evidence of his prior guilty plea should have been excluded pursuant to Rule 403. In view of the limiting instruction given by the district court and the probative value of the evidence, we cannot say that the district court abused its discretion in admitting it. *See United States v. Downing,* 297 F.3d 52, 59 (2d Cir.2002) ("[T]he district court retains broad discretion to balance the evidence's potential prejudice to the defendant against its probative value. For this rea-

son, when we review the district court's judgment regarding the admissibility of a particular piece of evidence under Fed. R.Evid. 403, we generally maximize its probative value and minimize its prejudicial effect." (citations and quotation marks omitted)).

We have considered all of Appellant's arguments and find them meritless. We therefore AFFIRM the judgment of the district court.