**UNITED STATES of America,**
**Appellee,**

v.

**Patricia LOPEZ, also known as Patricia Brito Lopez;  Ramiro Rodriguez;  Jose Parrado, Defendants,**

---

Hector Penaranda, also known as "El Viejo", Ramon Echiveria, Defendants–Appellants.

No. 03–1055L, 03–1284CON.

United States Court of Appeals, Second Circuit.

Oct. 26, 2004.

Monica R. Jacobson, Alvy & Jacobson, New York, NY, for Penaranda.

Robert A. Culp, New York, NY, for Echiveria.

Helen Cantwell, Assistant United States Attorney (David N. Kelley, United States Attorney for the Southern District of New York, I. Bennett Capers, Assistant United States Attorney, on the brief), New York, NY, for the United States.

Present: POOLER, SACK, and RAGGI, Circuit Judges.

## SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, AD-JUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED** in part.

Hector Penaranda and Ramon Echiveria appeal from judgments of conviction entered on January 29, 2003, and May 5, 2003, in the United States District Court for the Southern District of New York, following a jury trial. In light of the Supreme Court's recent decision in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and our in banc certification of the issues implicating *Blakely* that arose from Penaranda's sentencing, *United States v. Penaranda*, 375 F.3d 238 (2d Cir.2004), we do not here decide the *Blakely*-based arguments raised in either defendant's case. With respect to the challenges that we do decide, we assume the parties' familiarity with the underlying facts, procedural history, and specification of appellate issues and affirm for the following reasons:

■ (1) Penaranda claims that the government effectively deprived him of his Sixth Amendment confrontation rights by failing to take any notes during approximately fifty hours of meetings with Lopez, a cooperating witness who eventually testified against Penaranda. In support of this position Penaranda suggests that the Jencks Act, 18 U.S.C. § 3500(b), requires the government to create, as well as preserve, such statements. However, the language of the Jencks Act clearly contemplates only the retention of written or recorded statements. We do not agree that the Jencks Act can be interpreted to place an affirmative duty on the government to create written or recorded statements.[1]

(2) Penaranda contends that the district court erred in formulating its uncalled witness instruction, shifting the burden of proof from the prosecution to the defense. No challenge was raised to this instruction at trial; thus, we review only for plain error. *See Johnson v. United States*, 520 U.S. 461, 465–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (requiring a showing of (1) error, (2) that is plain, (3) affecting substantial rights and (4) seriously affecting the fairness, integrity, or public reputation of judicial proceedings). In review-

---

1. At oral argument, in response to an inquiry from the court, the government acknowledged that pursuant to its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), it might have been "the better practice" to have provided the defense with more information about the substance of Ms. Lopez's prior inconsistent oral statements to authorities. Because no *Brady/Giglio* challenge is raised by defendants on appeal, however, we need not address the issue further in this order.

ing jury instructions we are to look at "the instructions as a whole to see if the entire charge delivered a correct interpretation of the law." *United States v. Coyne*, 4 F.3d 100, 113 (2d Cir.1993) (internal quotation marks omitted). A defendant challenging a jury charge must demonstrate that the charge was both erroneous and prejudicial, *United States v. Mulder*, 273 F.3d 91, 105 (2d Cir.2001). Applying these principles to this case, it is apparent that the jury charge, read as a whole, clearly establishes that the burden of proof is on the government. Thus, Penaranda's challenge fails to clear even the first hurdle of plain error review.

▪ (3) Penaranda argues that the district court violated Fed.R.Evid. 403 and 404(b) in admitting evidence that he had committed unspecified uncharged crimes in the past with Echiveria. The standard of review is abuse of discretion. *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir.1996). No abuse is evident in this case. The evidence was plainly relevant to an issue other than propensity. Specifically, it established the defendants' past relationship of trust in connection with criminal activities, which, in turn, explained why Penaranda would have solicited Echiveria's assistance in the charged conspiracy. We recognize such evidence as admissible under Rule 404(b). *Id.* (rejecting a Rule 404(b) challenge to extrinsic act evidence that established "the basis for ... co-conspirators' relationship of mutual trust"). Furthermore, because the prior crimes evidence was heavily redacted and was presented with a limiting instruction, Penaranda fails to demonstrate that its prejudicial impact outweighed its probative value.

▪ (4) Penaranda also contends that the district court erred in instructing the jury that the evidence of prior crimes could be used to determine intent at the time the evidence was admitted, but not explicitly withdrawing that instruction when in its final charge, the court allowed the jury to consider the evidence only to explain the relationship between Penaranda and Echiveria. However, because Penaranda did not object to the jury charge he concedes that he faces the plain error standard. *See Johnson*, 520 U.S. at 465–67. We conclude that the plain error standard is not met because the fairness, integrity, or public reputation of the courts is not called into question here.

(5) Echiveria also challenges the admission of the prior crimes evidence. However, nothing materially distinguishes his situation from that of Penaranda, and we likewise hold that the district court did not abuse its discretion in admitting the evidence.

▪ (6) Echiveria claims that the government failed to present constitutionally sufficient evidence on the element of knowledge to convict him of the charged conspiracy. We review insufficiency claims de novo, *United States v. Naiman*, 211 F.3d 40, 46 (2d Cir.2000), but "assess the evidence in the light most favorable to the government," *United States v. Berger*, 224 F.3d 107, 116 (2d Cir.2000), "credit[ ] every inference that the jury might have drawn in favor of the government," *United States v. Walker*, 191 F.3d 326, 333 (2d Cir.1999) (internal quotation marks removed), and "resolve all ... issues of credibility in favor of the [guilty] verdict," *United States v. Howard*, 214 F.3d 361, 363 (2d Cir.2000). We will reverse only if no reasonable jury could have found the defendant guilty on the evidence presented. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Despite this stern standard, Echiveria insists that he is entitled to reversal in light of our decision in *United States v.*

*Cruz,* 363 F.3d 187 (2d Cir.2004). He is wrong. In *Cruz,* we concluded that certain circumstances could support only an inference that Cruz lacked guilty knowledge: a jury found Cruz guilty of possessing cocaine with intent to distribute through an aiding and abetting theory but acquitted him on a conspiracy count; his agreement with his criminal confederates had involved a completely different crime from the one charged; when plans changed, confederates deliberately put some physical distance between Cruz and the criminal activity; and, in a post-arrest statement, Cruz specifically disavowed guilty knowledge. *Id.* at 190–91.

The circumstances of this case are quite different. The jury here found Echiveria guilty of the conspiracy count. The criminal purpose of the conspirators—the collection of money owed for drugs—never varied. Nor did co-conspirators ever isolate Echiveria from the critical events of their scheme. To the contrary, he played a leading role; while the other conspirators waited in vehicles, Echiveria, together with Rodriguez, was assigned the task of meeting with Espada in the McDonald's restaurant to collect the $50,000 debt. Echiveria submits that this evidence proved only that he was collecting money, not that he was a knowing participant in a drug scheme. This remote possibility did not preclude the jury from reasonably reaching a contrary conclusion. Indeed, further evidence supports their finding of guilty knowledge. As already noted, the jury was presented with evidence that Echiveria and Penaranda had a prior criminal relationship, and that they routinely discussed their crimes before executing them. Given this relationship of trust, it is unlikely that Penaranda would have recruited Echiveria to participate in the charged scheme unwittingly. Further, cellular telephone records showed that Echiveria's phone had been used to contact both Penaranda and Lopez prior to the collection attempt. Indeed, it was Echiveria's cellular telephone that was used by the conspirators as a contact for Espada on the day of the collection attempt. It was Echiveria who answered this telephone when Espada called on the day of the collection attempt. It is extremely improbable that co-conspirators would have risked Echiveria's speaking with Espada if he had no knowledge of their criminal purpose. *See e.g. United States v. Soto,* 959 F.2d 1181, 1185 (2d Cir.1992). The jury could have also based a finding of guilty knowledge on the fact that when Espada called Echiveria knew, without any need for inquiry, to hand the telephone to Rodriguez. Also, it was Echiveria who carried the message to Lopez that Espada wanted to speak directly to her. Furthermore, surveillance confirmed that these co-conspirators did not exclude Echiveria from their motor vehicles while they carried on telephonic conversations with Espada in furtherance of the charged conspiracy. Finally, unlike Cruz, whose denial of guilty knowledge after arrest would not have permitted an adverse inference if true, Echiveria's demonstrably false explanation of his presence at the collection site was some evidence from which the jury could infer guilty knowledge. *See e.g., United States v. Reyes,* 302 F.3d 48, 56 (2d Cir.2002).

In sum, this is not a case in which no reasonable jury could conclude beyond a reasonable doubt from the totality of the evidence that Echiveria was guilty of the crime charged. Accordingly, we reject his sufficiency challenge as without merit.

(7) We have reviewed the remainder of the defendants' claims that do not implicate *Blakely* and find them to be without merit. We therefore affirm in part and withhold judgment on the *Blakely* issues. As we reserve certain issues for further

consideration, no mandate will issue at this time.