18-2836 (L)
*United States v. Scott*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURTS LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of November, two thousand twenty.

PRESENT:  AMALYA L. KEARSE,
                  RICHARD J. SULLIVAN,
                  MICHAEL H. PARK,
                          *Circuit Judges.*

-------------------------------------------------------------------

UNITED STATES OF AMERICA,

　　　　　*Appellee,*

　　v.                                                    No. 18-2836
                                                              No. 18-2882

KATHY SCOTT, AKA KATHY TODD,
GEORGE SANTIAGO, JR.,

　　　　　*Defendants-Appellants,*

CARSON MORRIS,
                  *Defendant.*

-------------------------------------------------------------------

FOR APPELLANT SCOTT: RICHARD D. WILLSTATTER, Green & Willstatter, White Plains, NY.

FOR APPELLANT SANTIAGO: DANIEL A. HOCHHEISER, Law Offices of Daniel A. Hochheiser, Scarsdale, NY.

FOR APPELLEE: ANDREW DEMBER, Assistant United States Attorney (Anna M. Skotko, Won Shin, Assistant United States Attorneys, *on the brief*), *for* Audrey Strauss, Acting United States Attorney for the Southern District of New York, New York, NY.

Appeal from judgments of the United States District Court for the Southern District of New York (Kenneth M. Karas, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

Defendants-Appellants Kathy Scott and George Santiago, Jr. – former correction officers with the New York State Department of Correction and Community Supervision ("DOCCS") at the Downstate Correctional Facility in Fishkill, New York – appeal from their judgments of conviction and sentences following a two-week jury trial in the United States District Court for the Southern

District of New York (Karas, *J.*) for conspiracy to deprive a person of civil rights, in violation of 18 U.S.C. § 241; deprivation of civil rights, in violation of 18 U.S.C. § 242; conspiracy to falsify records, in violation of 18 U.S.C. § 371; and falsification of records, in violation of 18 U.S.C. § 1519.  Defendants' challenges to their convictions under 18 U.S.C. §§ 241 and 1519 are addressed in a separate opinion filed simultaneously with this summary order.  In this summary order, we address the remainder of Defendants' arguments, which include challenges to the adequacy of the jury instructions and the sufficiency of the evidence with respect to Scott's aiding and abetting charge under 18 U.S.C. § 242, the effectiveness of Santiago's trial counsel, and the procedural reasonableness of both Defendants' sentences.  We assume the parties' familiarity with the underlying facts, the record of prior proceedings, and the arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

## I.  Standard of Review

We review the sufficiency of the evidence *de novo*.  *United States v. Klein*, 913 F.3d 73, 78 (2d Cir. 2019).  In challenging the jury's verdict, a "movant bears a heavy burden."  *Id.* (internal quotation marks omitted).  "A reviewing court must credit every inference that could have been drawn in the government's favor, and

affirm the conviction so long as, from the inferences reasonably drawn, the jury might fairly have concluded guilt beyond a reasonable doubt." *Id.* (alterations, internal citations, and internal quotation marks omitted).

In reviewing jury instructions, we look to the charge "as a whole to see if the entire charge delivered a correct interpretation of the law." *United States v. Al Kassar*, 660 F.3d 108, 127 (2d Cir. 2011). Where, as here, a defendant fails to object to the jury charge, we review only for plain error. *United States v. Bahel*, 662 F.3d 610, 634 (2d Cir. 2011). Under this standard, "an appellate court may, in its discretion" grant relief if the defendant demonstrates (1) error, (2) that is plain, (3) that affected the defendant's substantial rights, which typically means there is a "reasonable probability that the error affected the outcome of the trial," and (4) that "seriously affect[ed] the fairness, integrity[,] or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (internal quotation marks omitted).

Finally, we review the district court's interpretation of the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") *de novo* and finding of facts for clear error. *United States v. Rubenstein*, 403 F.3d 93, 99 (2d Cir. 2005).

4

## II. Discussion

### A. 18 U.S.C. §§ 242 and 2

Scott argues that the district court incorrectly instructed the jury as to 18 U.S.C. § 242, and that there was insufficient evidence to uphold her conviction under that section. Specifically, Scott contends that "Section 242 does not impose an affirmative duty to act," Scott Br. at 35, and that the district court therefore erred in charging the jury that she could be liable for "failure to act" if she did so "with the specific intent to fail to do something the law require[d] to be done," Scott App'x at 482–83.

Section 242 makes it a crime for a person, acting "under color of any law," to "willfully" deprive an individual of "any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 18 U.S.C. § 242. The government's theory at trial was that Defendants violated § 242 by "willfully and knowingly depriv[ing] Kevin Moore of his constitutional right to be free from the excessive use of force, amounting to the infliction of cruel and unusual punishment resulting in bodily injury." Scott App'x at 464. To establish a violation of § 242, the government was required to prove that the defendant "(1) acted under color of law; (2) used excessive force amounting to punishment;

(3) acted willfully; and (4) caused bodily injury." *United States v. Coté*, 544 F.3d 88, 98 (2d Cir. 2008). "To convict a defendant of aiding and abetting [a violation of § 242], the government [was required to] prove that 'the underlying crime was committed by someone other than the defendant and that the defendant [herself] either acted or failed to act with the specific intent of advancing the commission of the underlying crime.'" *United States v. Cain*, 671 F.3d 271, 303 (2d Cir. 2012) (quoting *United States v. Pipola*, 83 F.3d 556, 562 (2d Cir. 1996)).

Although Scott was charged both as a principal and an aider and abettor, she focuses only on the latter charge in her appeal. As to aiding and abetting liability, the district court instructed the jury that it was required to find that the "defendant[] willfully and knowingly associated [herself] in some way with the crime, and that the defendant[] willfully and knowingly participated in the crime by doing some act to help make the crime . . . succeed," meaning that "the defendant engaged in some affirmative conduct or overt act with the specific purpose of bringing about that crime." Scott App'x at 482. It further instructed the jury that "[p]articipation in a crime is willful if action is taken voluntarily and intentionally, or in the case of a failure to act, with the specific intent to fail to do

6

something the law requires to be done; that is to say, with a bad purpose either to disobey or disregard the law." Scott App'x at 482–83.

Although Scott makes much of the fact that § 242 by itself imposes no duty to act, the Second Circuit has recognized "a legal duty to act can arise from a statute specifically creating the duty . . . or by extrapolation from a different statute, the common law, or contract." *United States v. Sabhnani*, 599 F.3d 215, 237 n.12 (2d Cir. 2010). A legal duty can equally arise from the United States Constitution – here, the right to be free from excessive force as provided by the Eighth Amendment. *See Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010) (emphasizing that the Eighth Amendment prevents against excessive force that is "carried out maliciously and sadistically" (internal quotation marks omitted)); *see also Owens v. Haas*, 601 F.2d 1242, 1249 (2d Cir. 1979) (noting that "the federal government owes a duty of reasonable care to safeguard the security of prisoners under its control," which stems, in part, from "general duties imposed by the Constitution"). It is well-settled that an officer has a duty to intervene to protect an individual under the control and custody of the state from excessive force. *See, e.g., DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989) (noting that "when the State takes a person into its custody and holds him there against his

7

will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety," and imposes an "affirmative duty to protect"); *see also Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) ("A police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force . . . . Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." (internal citation omitted)). Accordingly, we find that the district court's instructions were not plainly erroneous.

Second, Scott contends that, even if the jury instructions were correct, there was insufficient evidence that she affirmatively acted to further the crime or that she even had a duty to stop the attack. As to her first point, there was more than sufficient evidence for the jury to find that Scott took steps to physically restrain Moore and that she instructed others to do so, with the specific intent of facilitating the attack. In weighing the evidence, the jury was entitled to reject Scott's defense that she acted for the purpose of legitimately restraining an unruly inmate. As to her second point, the evidence was more than sufficient to show that Scott had a duty to intervene. This duty, as noted above, stemmed from the Eighth Amendment. Moreover, it was further incorporated in the DOCCS policies, which

made clear that she had a duty to act in circumstances such as this: specifically, a DOCCS Lieutenant and a DOCCS training official testified that officers are trained to refrain from using excessive force and that supervisors have a duty to prevent subordinates from using such force. And, as the record makes clear, there was ample proof to establish that Scott failed to fulfill that duty. The evidence was thus legally sufficient, and the jury was permitted to find that Scott knowingly and willfully aided and abetted the other officers' violations of § 242.[1]

## B. Ineffective Assistance of Counsel

Santiago also contends that he was denied the right to a fair trial because his counsel was ineffective in (1) eliciting testimony from Corrections Officer Roberto Brown about Santiago's previous use-of-force incident, which he later referenced in summation, and (2) eliciting hearsay regarding a false account of the incident during the cross-examination of Moore. To raise an ineffective assistance of counsel claim, a defendant must show counsel's actions fell below "an objective standard of reasonableness" under "prevailing professional norms," and that "but for counsel's unprofessional errors, the result of the proceeding would have been

---

[1] We further emphasize that the jury was not even required to reach the question of aiding and abetting liability, since the evidence was more than sufficient for the jury to find that Scott violated § 242 as a principal by restraining Moore so that he could be assaulted by Santiago.

9

different." *Strickland v. Washington*, 466 U.S. 668, 687–89, 693–94 (1984). "When faced with a claim for ineffective assistance of counsel on direct appeal, we may: (1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255; (2) remand the claim to the district court for necessary factfinding; or (3) decide the claim on the record before us." *United States v. Morris*, 350 F.3d 32, 39 (2d Cir. 2003). "Among these options, the Supreme Court has instructed that 'in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance,'" *United States v. Tarbell*, 728 F.3d 122, 128–29 (2d Cir. 2013) (quoting *Massaro v. United States*, 538 U.S. 500, 504 (2003)), since the district court is "the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial," and may "take testimony from witnesses for the defendant and the prosecution and from the counsel alleged to have rendered the deficient performance," *Massaro*, 538 U.S. at 505. Accordingly, we decline to consider Santiago's ineffective assistance claim at this time and dismiss that claim, without prejudice to the filing, in due course, of a § 2255 petition. *See Tarbell*, 728 F.3d at 128–29; *see also Morris*, 350 F.3d at 39.

## C. Reasonableness of the Sentences

Scott and Santiago both contend that the district court erred in applying a two-level sentencing enhancement for "physically restrain[ing] [the victim] in the course of the offense," U.S.S.G. § 3A1.3, insisting that the only force they used was part of a legitimate attempt to regain control over Moore. But the district court – like the jury – explicitly rejected this argument, finding that the "purpose" of the restraint was to "ma[ke] the assault and the continued assault possible." Scott App'x at 540. In light of the wealth of evidence demonstrating Scott's and Santiago's roles in the assault, we cannot say that the district court's finding was clearly erroneous.

Scott also argues that the district court erred in applying a three-level enhancement based on her role as a "manager or supervisor (but not an organizer or leader)" of "criminal activity [that] involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). According to the Sentencing Guidelines, a defendant is a manager or supervisor if she "exercised some degree of control over others involved in the commission of the offense or played a significant role in the decision to recruit or to supervise lower-level participants." *United States v. Hertular*, 562 F.3d 433, 448 (2d Cir. 2009) (interpreting U.S.S.G.

§ 3B1.1(b)).  Although Scott argues that she was not a "manager or supervisor" during the assault, the district court emphasized that she was "the ranking official," and that her participation in the assault therefore had the "symbolic significance" of giving the "green light" to Santiago and the other officers on the scene.  Scott App'x at 539.  In addition, the evidence at trial established that Scott directed the probationary officers out of the area to limit the number of witnesses to the assault, directed her subordinate officers to submit false use-of-force reports that described Moore as the aggressor, and directed other officers not to submit reports even though they were required to do so.  Based on the record before it, we cannot say that the district court erred in applying the aggravated role enhancement.

We have considered Defendants' remaining arguments and conclude that they are without merit.  For the foregoing reasons and the reason stated in the accompanying opinion filed simultaneously with this summary order, the judgments of the district court are AFFIRMED.

FOR THE COURT:
Catherine O-Hagan Wolfe, Clerk of Court

12