UNITED STATES of America, Plaintiff,

v.

Deric FRANK, Defendant.

No. 97 CR 269 (DLC).

United States District Court,
S.D. New York.

May 22, 1998.

See also 11 F.Supp.2d 322.

---

Mary Jo White, United States Attorney, Southern District of New York, John Hillebrecht, Kerry Lawrence, Assistant United States Attorneys, New York City, for U.S.

Leonard Joy, Jonathan Bach, Legal Aid Society, Federal Defender Div., New York City, Kevin McNally, McNally & Robinson, Frankfort, KY, for Deric Frank.

## OPINION .

COTE, District Judge.

By letter to the Court dated April 6, 1998, the Government provided formal notice to the defendant, Deric Frank, and to the Court, of the Government's intention to offer evidence pursuant to Federal Rule of Evidence 404(b) ("Rule 404(b)") against Frank at the guilt phase of this capital trial. The process of selecting a jury is scheduled to begin on June 4, 1998.

The Court has reviewed the Government's April 6 letter, as well as the following letter submissions on this topic: Frank's April 21 response; the Government's April 27 reply; and, finally, Frank's April 28 sur-reply. For the reasons set forth below, the Court finds that certain evidence offered by the Government with respect to both Frank's drug dealings and his prior abuse of the victim, Shaneika Price, as a general matter, is admissible at the guilt stage of this prosecution.[1]

---

1. The Court will not address in this Opinion the admissibility of evidence that Frank raped Price after her abduction and before her death. The Government contends that such evidence—which appears to include evidence that Frank's semen was found in Price's body—is not Rule 404(b) evidence, but rather is proof of the crimes charged themselves. Given that the Government has not yet decided whether to argue that Frank raped Price, and in any event may not so argue without first presenting a detailed *in limine* proffer to support its contention, the Court will put off any decision regarding this inflammatory evidence. As an initial matter, however, the Court notes that evidence that Frank's semen was found in Frank's body may help place Frank at the scene of the crime, and therefore may be highly relevant and probative. Nevertheless,

## I. BACKGROUND

To provide a context for its analysis of the evidence currently at issue, the Court sets forth the following brief facts about this case. Frank is alleged to have been a drug dealer in Norwalk, Connecticut. In this case, he is accused of having kidnapped his former girlfriend, Price, transported her across state lines, and killed her by setting fire to her car after locking her in the trunk. The Government's theory of the crime is two-fold: first, the Government argues that Frank killed Price because he feared that she was cooperating with police and was about to tell them where he kept his "stash" of drugs; and second, the Government maintains that Price's murder represented the final event in a long history of domestic violence. Consequently, the evidence that the Government intends to offer under Rule 404(b) runs to both aspects of, this theory. The Government seeks to offer evidence of Frank's drug activities—and Price's knowledge of those activities—in order to establish Frank's motive for killing her. Similarly, the Government seeks to introduce evidence of prior abuse as probative of Frank's "motive" and intent to kill Price.

Frank contends that all of the proffered evidence is inadmissible, on the ground that it will unfairly prejudice the jury against the defendant and that it will lead to jury confusion. In addition, Frank has requested a pre-trial hearing on the sufficiency of the Government's evidence to support its theory of the case regarding Frank's drug activities. Finally, Frank argues that intent evidence is inadmissible since Frank's defense throughout this litigation has been that "he did not commit the criminal acts at all," and intent, therefore, "is not an issue" in this case.

## II. DISCUSSION

 The standards for evaluating the admissibility of evidence under Rule 404(b) and Rule 403 are well established.[2] Evidence that is relevant to some issue or issues at trial other than the defendant's character is admissible if the evidence's probative value is not substantially outweighed by the risk of unfair prejudice. *Huddleston v. United States*, 485 U.S. 681, 689–90, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988); *United States v. Figueroa*, 618 F.2d 934, 939 (2d Cir.1980). For example, Rule 404(b) expressly provides that evidence of "bad acts" that help establish the defendant's motive are admissible. Similarly, courts have routinely held that evidence which completes the story of the crimes charged, demonstrates the background of a charged conspiracy, or explains the nature of a relationship, is admissible. *See, e.g., United States v. Pipola*, 83 F.3d 556, 566 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 183, 136 L.Ed.2d 122 (1996); *United States v. Araujo*, 79 F.3d 7, 8 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 225, 136 L.Ed.2d 157 (1996); *United States v. Brennan*, 798 F.2d 581, 589–90 (2d Cir.1986). Evidence of uncharged criminal activity is not even Rule 404(b) evidence if it

> arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.

*United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir.1997) (internal quotation omitted).

whether the Government will have established sufficient proof to argue that the semen was present because Frank *raped* Price is another matter that must await more detailed examination.

2. Rule 404(b) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial. Rule 404(b), Fed.R.Evid.
 Rule 403 provides:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Rule 403, Fed.R.Evid.

Only when the past act evidence is offered to prove the defendant's knowledge or intent is there any requirement that the past act and charged conduct actually be similar. *Araujo*, 79 F.3d at 8.

■ The Second Circuit has adopted an inclusionary approach to Rule 404(b). Indeed, in this Circuit, "evidence of prior crimes, wrongs, or acts is admissible for *any* purpose other than to show a defendant's criminal propensity," *United States v. Lasanta*, 978 F.2d 1300, 1307 (2d Cir.1992) (emphasis in original) (citations omitted), provided that the probative value of the evidence is not "substantially outweighed by the danger of unfair prejudice." *Pipola*, 83 F.3d at 566. The district court is vested with broad discretion to determine whether to admit evidence offered under Rule 404(b). *Id.*

### A. *Evidence of Frank's Narcotics Dealings Is Admissible.*

■ Here, the Government offers evidence of both Frank's narcotics dealings and his prior abuse of Price as "motive" evidence.[3] The Court addresses first the evidence of Frank's narcotics operation. This evidence, which is not "similar act" evidence, demonstrates that Frank had a reason to want Price dead. Such evidence is properly admitted because it helps the jury decide—on the basis of motive rather than character— whether the defendant is likely to have been the one responsible for the crime. *See United States v. Willoughby*, 860 F.2d 15, 24 (2d Cir.1988) (evidence of defendant's participation in an uncharged robbery admissible to prove defendant's motive to commit the charged crime, obstruction of justice with respect to the robbery); *United States v. Pedroza*, 750 F.2d 187, 200–01 (2d Cir.1984) (evidence of defendant's participation in uncharged cocaine transaction admissible to prove defendant's motive for charged kidnapping). *See also United States v. Pacheco*, 902 F.Supp. 469, 474 (S.D.N.Y.1995) (evidence of uncharged narcotics conspiracy admissible to prove motive for charged kidnapping).

Evidence of Frank's narcotics dealings, and Price's knowledge of them, also is admissible to complete the story of the crimes charged. Without this information, the jury would be "unable to understand the government's theory of the case." *Pedroza*, 750 F.2d at 201. In *Pedroza*, which also involved a kidnapping, the Second Circuit explained why evidence of the defendants' uncharged narcotics dealings was admissible in terms that resonate with this case. The victim of the kidnapping in *Pedroza* was a young boy named Luis whose uncle held seven kilograms of cocaine claimed by the defendants. The defendants demanded the return of the cocaine in exchange for Luis' release. The Second Circuit stated:

> some detail as to the events involving the cocaine was necessary to the jury's understanding of, for example, whether a kidnapping was intended, why a kidnapping might have been thought desirable, and why the person abducted was Luis.

*Id.* Here, evidence of Frank's narcotics dealings similarly is necessary to help the jury understand why Frank feared Price's cooperation with the police, what he had to lose if she continued to cooperate, and why Price— as distinguished from all others—was abducted.

Frank does not contend that the evidence that the kidnapping and murder had a drug-related motive is irrelevant. He argues, however, that its admission will unfairly prejudice the defendant. The Court finds that the strong probative value of the evidence is not substantially outweighed by any prejudice its admission poses to the defendant. *See id.* (narcotics evidence introduced to prove motive for kidnapping); *Pacheco*, 902 F.Supp. at 474 (same). Frank is not charged with minor offenses compared to the narcotics dealings. He is charged with kidnapping in which a death resulted, for which he faces the death penalty, and violations of the Violence Against Women Act. Although, in other contexts, it may be true that evidence of drug dealing should be excluded from a nonnarcotics trial, *see United States v. Ong*, 541 F.2d 331, 339–40 (2d Cir.1976) (acknowl-

---

**3.** The Government argues that both strands of evidence, in addition to demonstrating motive, also demonstrate "preparation, identity and other permissible issues under Rule 404(b)." .

edging potential for unfair prejudice but nevertheless upholding admission of evidence of narcotics dealings in bribery prosecution), that is not the case here. Given the other, arguably much more inflammatory, evidence that will be before this jury—for example, evidence of Price's abduction and death—it cannot reasonably be said that allowing evidence of Frank's drug dealings would be unfairly prejudicial. In any event, the probative value of this motive evidence strongly outweighs any prejudicial impact. It is hard to imagine what other, less prejudicial, evidence the Government could offer in the place of this evidence that would accomplish the same purpose. *Compare Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 653–55, 136 L.Ed.2d 574 (1997).

In sum, the Court finds that evidence of Frank's narcotics dealings is highly probative of his motive to commit the crimes charged in the indictment and is necessary to complete the story of the crimes charged. The probative value of this evidence is not outweighed by any unfair prejudice to the defendant.[4] Nor is this evidence likely to confuse the jury. The Court will instruct the jury that it may take this evidence into account at the guilt phase only *for the purpose of considering Frank's motive to commit the crimes charged and to understand the background of the crimes.*[5] *See Pipola,* 83 F.3d at 566. Jurors may be presumed to follow such instructions. *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).

That the Government intends to return to the issue of the defendant's motive at the penalty phase, in proving its first non-statutory aggravating factor,[6] does not change the Court's analysis. Frank correctly notes that, at the penalty phase, the Government bears

the burden of proving the existence of this aggravating factor beyond a reasonable doubt. Consequently, he argues that admission of evidence about Frank's narcotics dealings during the guilt phase "may ultimately dilute the government's burden of proof at any penalty phase proceeding." He claims that "despite even the most careful precautions," the jury will be confused by having the same evidence introduced at both stages, and by different instructions regarding the purposes of such evidence, which are "likely to be contradictory and confusing."

The Court disagrees. In its Opinion of May 6, the Court set forth at great length its understanding of the Federal Death Penalty Act ("FDPA"), which governs the capital aspects of this case. One important aspect of the FDPA is the gatekeeping role that it establishes for the district court at the penalty phase of a capital proceeding. The FDPA also explicitly allows the jury to consider as an aggravating factor at the penalty phase information about the crime that it already considered at the guilt phase. An inevitable offshoot of this structure is that the jury will consider some of the same evidence at both stages.

Should this case reach a penalty phase, the Court will ensure that the evidentiary standard established by the FDPA for the penalty phase is enforced. The Court also will instruct the jury that it may consider evidence of Frank's narcotics dealings solely for the purpose of deciding whether the Government has met its burden of proof—beyond a reasonable doubt—of proving the first non-statutory aggravating factor. Finally, if appropriate, the Court will instruct the jury regarding the differences between the purposes for which the evidence was offered at

---

**4.** Of course, the Government will not be permitted to offer cumulative evidence of Frank's drug dealings. *See Pacheco,* 902 F.Supp. at 474, n. 3.

**5.** The parties are invited to submit by June 15 proposed instructions for the Court to administer at the time the evidence regarding the defendant's drug activities is received.

**6.** The first non-statutory aggravating factor for which the Government has given notice is that the "victim was killed in an effort to obstruct justice, to tamper with a witness, and in retalia-

tion for the victim's cooperating with law-enforcement authorities, each as part of an effort by the defendant to protect his illegal narcotics distribution activities and in furtherance of those activities." A comprehensive discussion of the Government's proposed statutory and non-statutory aggravating factors is set forth in the Court's May 6 Opinion upholding the constitutionality of the Federal Death Penalty Act, pursuant to which the Government seeks the death penalty in this case.

the guilt phase as contrasted with the penalty phase. Again, the parties are invited to submit to the Court any proposed requests to charge in this regard.

Frank cites no authority for the argument he advances that, because this is a capital prosecution, the jury may not be presumed to follow instructions. Although the Court is well aware of the Supreme Court's "death is different" jurisprudence, this principle is not reason to disregard such a basic and integral tenet of our criminal justice system, especially in the context of a case where the Court foresees no real danger of jury confusion.

Finally, the Court rejects Frank's renewed request for a pre-trial hearing, made in the first instance in his pre-trial motions addressed to the indictment and the constitutionality of the FDPA, on the sufficiency of the Government's evidence to support its theory of the case arising out of Frank's narcotics activities. The Government represented in its April 27 letter that it will be making a more detailed *in limine* proffer of the Rule 404(b) evidence it intends to offer. The Court finds that the Government's current proffer is sufficient to support the Court's present ruling.[7] This ruling does not, of course, ensure that any particular piece of evidence will be admitted at Frank's trial. It establishes only that, in principle, the evidence described by the Government is admissible. A specific determination of the admissibility of each piece of evidence will be made prior to the receipt of the evidence and after consideration of the Government's more detailed proffer.

B. *Evidence of Frank's Prior Abuse of Price is Admissible.*

■ Evidence of Frank's abuse of Price also is properly admitted, although for slightly different reasons than is the evidence of his drug dealings. As currently presented by the Government, this evidence would come in to establish Frank's hostility, for lack of a better word, toward Price.[8] So understood, the evidence helps establish an additional reason why Frank might have killed Price. It will convey to the jury important and relevant information regarding Frank's overall feelings about Price, which will help it evaluate whether he had a reason or desire to kill her. *See United States v. McKinney,* 954 F.2d 471, 480 (7th Cir.1992) (evidence of early manifestations of defendant's hatred of victim admissible to suggest motive); *United States v. Russell,* 971 F.2d 1098, 1107 (4th Cir.1992) ("[h]ostility is a paradigmatic motive for committing a crime"); *Government of Virgin Islands v. Harris,* 938 F.2d 401, 420 (3d Cir.1991) (history of violent acts against murder victim were highly probative of motive); *Hopkinson v. Shillinger,* 866 F.2d 1185, 1198 (10th Cir. 1989) (evidence of intensity of disputes between defendant and victim admissible as probative of motive).

Frank argues that the critical issue in this case is not the defendant's intent or whether an offense was committed in the first instance, as it was in several of the domestic violence cases cited by the Government. Instead, he contends that the critical issue is whether he was at all involved in the offenses. To date, however, Frank has not removed the issue of intent from this case. *See United States v. Tarricone,* 996 F.2d 1414, 1421–23 (2d Cir.1993) (explaining methods available to remove issue of intent from the case); *United States v. Colon,* 880 F.2d 650, 659 (2d Cir.1989).[9] Until he does so, the

---

7. The Government contends that witnesses will testify to the fact that Frank expressed fear that Price was talking to the police about his narcotics activities and that she made efforts up until the time of her death to have Frank arrested for these activities. In addition, the Government represents that it has evidence that "on the morning of her abduction Frank discussed moving his stash of drugs and other contraband so that Price could not inform the police of its location."

8. To the extent that the Government also intends to offer the evidence to establish a pattern of

abuse, in the sense of triggering events for bouts of violence, it has not yet articulated a persuasive theory of such a pattern in the past and how the events immediately leading up to Price's death fall into such a pattern. If the Government does intend to rely on such a theory, it should present a better articulation of the theory before offering the evidence.

9. For example, Frank has not offered to stipulate that, should the jury find that he did the acts in question, they were done intentionally, *Colon,* 880 F.2d at 659, or agreed that the Court may charge the jury that if it finds all other elements

Government has the obligation to prove in the course of its presentation all the elements of the crime, including intent. *See United States v. Inserra,* 34 F.3d 83, 90 (2d Cir.1994) (knowledge and intent evidence admissible on the Government's case-in-chief if it is apparent that they are in dispute); *Figueroa,* 618 F.2d at 939 (discussing whether evidence is better saved for rebuttal rather than prosecution's case-in-chief). Nevertheless, even assuming that Frank does remove intent from the case, the evidence is admissible to establish his motive. It also is admissible to prove Price's state of mind, which is necessary for the kidnapping charge. The evidence of abuse strongly suggests that Price would not willingly have gotten into her car with Frank, and therefore that she was held and transported against her will. *See United States v. Macklin,* 671 F.2d 60, 64 (2d Cir.1982) (to prove kidnapping, government must prove that victim was taken, held, and transported against her will).

The Court also finds that evidence of abuse is properly admitted to establish the background of the relationship between Frank and Price, which is critical to the Government's theory of the case. Thus, even if this evidence were not admitted to establish Frank's motive, it would be admissible in order to situate the crimes with which Frank is charged in a coherent narrative for the jury. *See Old Chief,* 117 S.Ct. at 653–54 (explaining the value of providing the jury with a descriptive, even colorful, narrative of the events in question); *Gonzalez,* 110 F.3d at 941 (evidence need only tend to prove the Government's case; evidence that adds context and dimension to the proof of the charges has that tendency); *Araujo,* 79 F.3d at 8; *Inserra,* 34 F.3d at 89 ("bad acts" evidence admissible to demonstrate context of events relevant to charges). A presentation of this case that omitted any mention of the long-standing relationship between Frank and Price would be incomplete and misleading; and any presentation of that relationship that omitted any mention of violence similarly would be incomplete and misleading.

Rule 404(b) does not require that the Government present its case to the jury stripped of all relevant information about the defendant that suggests prior bad acts. It requires only that the Government not invite the jury to infer guilt on the basis of the jury's estimation of the defendant's propensity for violence or other types of criminal acts. Here, the Court finds that evidence of Frank's prior abuse of Price is necessary to "present to the jury a picture of the events relied upon," *Old Chief,* 117 S.Ct. at 653 (internal quotation omitted), and that carefully drafted limiting instructions will ensure that the jury does not consider the evidence for the impermissible purpose prohibited by Rule 404(b).

Nevertheless, given the inevitably prejudicial effect of this evidence, the Court will limit the evidence admitted, for the purposes of establishing both motive and the background of the relationship, to those events that are not too remote in time to the crimes charged in the indictment. The defendant concedes that the events that occurred within the month prior to Price's death—namely, the February 16, 1997, abduction and beating and the March 4, 1997, stalking and incident at a local supermarket (acts numbered 1 and 2 in the Government's April 6 letter)—are relevant. Beyond that, the Court finds as a general matter that the acts that occurred within approximately one year of Price's death—beginning on about March 11, 1996— will provide the jury with a sufficient picture of their relationship. *Cf. United States v. Hinton,* 31 F.3d 817, 823 (9th Cir.1994) (evidence of abuse that occurred over two years before the crimes charged admitted where there was no more recent such evidence and the evidence indicated the existence of a regular pattern of abuse); *Harris,* 938 F.2d at 406, 420 (admitting evidence of abuse as far back as seven years before charged crime where victim and defendant saw each other relatively infrequently and victim's body was never found). Accordingly, the Court has reviewed the Government's list of acts of prior abuse with the presumption that any

established, it can resolve issue against the defendant because intent is not disputed. *Tarricone,*

996 F.2d at 1421.

act that occurred prior to March 11, 1996, will not be admitted. This means that, unless the Government sets forth a persuasive reason why this limitation is unreasonable, acts numbered 6 and 9 through 16 in the Government's April 6 letter—which include many highly probative acts [10]—will not be admitted at the guilt phase of the trial.

In addition, the Court finds that, with respect to certain acts that occurred within the one-year period, their probative value appears to be outweighed by the danger of unfair prejudice. This is true for acts numbered 4 and 5 in the Government's April 6 letter, describing, respectively, a beating that occurred on July 23, 1996, causing swelling and bruising of Price's face, and a slashing to her face that occurred in June 1996. The Court finds, however, that act number 3, Frank's threatening of Price in the weeks immediately before her abduction regarding her cooperation with police, is admissible as close in time to the crimes charged, highly probative of the defendant's motive, and not outweighed by the danger of unfair prejudice. With respect to the incidents of stalking and harassment described in number 8, the Court will admit evidence regarding those incidents that occurred in the last two weeks of Price life—including Frank's slapping of Price with an open hand—as well as any other incidents of stalking and harassment in approximately a twelve month period before her death. Finally, with respect to act number 7, the slamming of Price's head into a metal pole in "late 1996," the Court will await a further proffer from the Government regarding the exact timing and circumstances of that event.

Notwithstanding these rulings, however, should Frank elicit testimony either on direct or cross-examination to the effect that he loved Price and never would have harmed her, or otherwise open the door to the admission of this evidence, the Government may be allowed to introduce the excluded evidence of abuse. In addition, reevaluation of the balance between the probative value and prejudicial impact of the excluded evidence may be appropriate during the course of the trial

and, if it is, the Government may renew its application to admit excluded evidence. *United States v. Benedetto,* 571 F.2d 1246, 1249 (2d Cir.1978). Finally, evidence that is excluded at the guilt phase nonetheless may be admissible at the penalty phase.

The fact that the Government intends to introduce this same evidence of Frank's abuse of Price at the penalty phase for the purpose of establishing another non-statutory aggravating factor—Frank's future dangerousness—does not alter the Court's finding that the evidence is admissible at the guilt phase. As discussed above with respect to the evidence of Frank's narcotics activities, the Court does not agree with Frank that the jury will be confused by receiving different instructions at the guilt and penalty phases concerning the purpose for which it is to consider such evidence.

### III. CONCLUSION

For the reasons set forth above, the Court finds that evidence of Frank's narcotics activities and certain evidence of his abuse of Price within the year prior to her death is admissible at the guilt phase of this prosecution for the purposes of establishing Frank's motive to commit the crimes charged in the indictment and to complete the story of the crimes presented to the jury. The Court also finds that such evidence may be introduced at the penalty phase for the purpose of establishing the non-statutory aggravating factors identified by the Government. There will be no hearing regarding the sufficiency of the Government's evidence to support the allegations concerning Frank's drug activities.

SO ORDERED.

---

**10.** The excluded acts include threatening Price with murder by pressing a gun to her head on June 17, 1995, and beating Price and ordering his dog to attack her on May 5, 1994.