**UNITED STATES of America,**

v.

**Curtis TAYLOR et al., Defendants.**

**No. 09 Cr. 0415 (VM).**

United States District Court,
S.D. New York.

Dec. 1, 2010.

Christopher Douglas Frey, U.S. Attorney's Office, New York, NY, for Plaintiff.

Elley J. Sharkey, Kelley J. Sharkey, Esq., Brooklyn, NY, Winston Lee, Winston Lee Esq., Sabrina P. Shroff, Federal Defenders of New York Inc., New York, NY, for Defendant.

## *DECISION AND ORDER*

VICTOR MARRERO, District Judge.

Defendants Curtis Taylor ("Taylor"), Samuel Vasquez, a/k/a "Rock" ("Vasquez"), and Antonio Rosario ("Rosario") are charged by indictment (the "Indictment") with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951, Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2, and using a weapon during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. Taylor is also charged with possession of a controlled substance by fraud and forgery, and aiding and abetting the same, in violation of 21 U.S.C. § 843(a)(3) and 18 U.S.C. § 2.

In connection with the scheduled trial in this matter, the Government moves *in limine* to allow certain evidence to be admitted as direct evidence and/or background evidence. In addition, the Government seeks to admit certain evidence pursuant to Rule 404(b) of the Federal Rules of Evidence ("Rule 404(b)"). Specifically, the Government requests that the Court admit:

(1) a redacted version of Taylor's post-arrest statements;

(2) a redacted version of Rosario's post-arrest statements;

(3) certain evidence to prove the false nature of Rosario's post-arrest statements;

(4) evidence concerning the development of the criminal relationship between a co-conspirator who is cooperating with the Government ("CW") and (a) Taylor and (b) Vasquez;

(5) evidence concerning prior firearms possession by Rosario;

(6) evidence that Vasquez previously sold an opium derivative to an undercover officer;

(7) evidence that Vasquez possessed a drug ledger concerning OxyContin and Oxycodone at the time of his arrest; and

(8) evidence that Taylor participated in a subsequent pharmacy robbery.

Vasquez objects to the Government's first, second, fourth, sixth, and seventh requests. Taylor objects to the Government's fourth and eighth requests. Rosario objects to the Government's third and fifth requests and moves *in limine*[1] to preclude the Government from introducing into evidence:

(1) Taylor's redacted post-arrest statements, or alternatively, to order that the defendants' trial be severed and that Taylor be tried separately; and

(2) portions of Rosario's post-arrest statements regarding his previous gun possessions and his denial of his own involvement in an alleged sec-

---

1. Vasquez joins in Rosario's motion *in limine* to the extent it argues that a joint-trial violates the Confrontation Clause. In addition, Vasquez joins in Rosario's request to sever trial from Taylor. Taylor also joins in the submissions of Rosario and Vasquez.

ond pharmacy robbery which occurred in March 2009.

For the reasons set forth below, both the Government's and Rosario's motions are GRANTED in part and DENIED in part.

## I. REDACTED POST–ARREST STATEMENTS OF TAYLOR

■ Subsequent to his arrest in this case, Taylor made statements to law enforcement officers including, among other things, his involvement in the robbery of a pharmacy located on East 34th Street, near Second Avenue, in New York, New York (the "Pharmacy") and his involvement in a scheme to fraudulently obtain controlled substances. At a hearing on May 6, 2010, the Court denied the motion to suppress Taylor's post-arrest statements. (See Supp. Hr'g Tr. 385, 387–88, May 6, 2010.) Accordingly, as part of its proof against Taylor alone, the Government seeks to admit a redacted version of Taylor's post-arrest statements that accords with Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and its progeny. In opposition, Vasquez and Rosario argue that, because of the likely introduction of these inculpating statements made by their co-defendant Taylor, Bruton requires that the trial of the defendants be severed and that Taylor should be tried separately. The Court disagrees.

■ In Bruton, the Supreme Court held that the admission of a non-testifying co-defendant's statement at a joint trial which on its face incriminates a defendant is a violation of that defendant's Sixth Amendment right to confront his accusers at trial. See 391 U.S. at 135–36, 88 S.Ct. 1620. The Supreme Court has made clear in subsequent cases, however, that a non-obvious redaction in which the co-defendants'

names are eliminated is admissible under Bruton. See Richardson v. Marsh, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); see also Gray v. Maryland, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998). In United States v. Alvarado, 882 F.2d 645, 651 (2d Cir.1989), the court held that a "redacted statement in which the names of co-defendants are replaced by neutral pronouns . . . and where the statement standing alone does not otherwise connect co-defendants to the crimes," coupled with a proper limiting instruction, "may be admitted without violating a co-defendant's Bruton rights." See also United States v. Tutino, 883 F.2d 1125, 1135 (2d Cir.1989). The redacted confession must be viewed in isolation from other evidence at trial to determine whether it incriminates a co-defendant. See United States v. Williams, 936 F.2d 698, 700–01 (2d Cir.1991). If the statement standing alone is not incriminating, then it "may be admitted with a proper limiting instruction even though other evidence in the case indicates that the neutral pronoun is in fact a reference to the [co-defendant]." Id. at 701.

In the present case, the Government has agreed to redact any reference to Vasquez or Rosario by name or nickname in Taylor's post-arrest statements. Vasquez and Rosario maintain that the redaction is insufficient because (1) they would be unduly prejudiced by the contents of the post-arrest statements, in which Taylor implicates his co-conspirators not only in the charged December 24, 2008 robbery, but also by evidence impeaching them in a subsequent, uncharged robbery that allegedly occurred in March 2009; and (2) the Government's proposal to replace Taylor's references to Rosario and Vasquez with generic, neutral pronouns is insufficient to cure the prejudice to them because the Government's proposed redactions make it

apparent that Taylor was referring to his co-defendants.

The Court can dispose of Rosario's and Vasquez's first argument because the Government has agreed not to offer any testimony suggesting that Taylor's co-conspirators in the uncharged March 2009 robbery were the same participants involved in the charged December 2008 robbery. The Government has submitted a further redacted copy of Taylor's post-arrest statement to reflect these changes (the "Second Redaction").[2]

In regards to Rosario's and Vasquez's second contention, the Court agrees with the Government that Taylor's post-arrest statements may be admitted as long as the co-defendants' names are redacted in a neutral non-awkward manner that does not indicate that the original statement contained actual names. *See Tutino*, 883 F.2d at 1135 (2d Cir.1989) (affirming conviction where statement of defendant was redacted to refer to his co-defendants as "others," "other people" and "another person").

Nonetheless, the Court finds that the Second Redaction is insufficient because it is highly prejudicial in its current form. For example, in the Second Redaction of Taylor's April 9, 2009 post-arrest statement, the Government initially replaced Rosario's name with the phrase "the guy waiting with Taylor at the BP gas station." Yet, throughout the remaining statement, the Government refers to Rosario at least ten times as "the guy with the gun." Given that all three defendants are charged with brandishing a firearm during a crime of violence, and that the Government is required to prove beyond a reasonable doubt that a firearm was used during the commission of the offense, the Court finds

that the Government's proposal to refer to one of the defendants as "the guy with the gun" is inappropriate. Although the original unredacted statement does mention that "[o]n the way down to 34th Street, Taylor observed Rosario with a firearm in his waist band and that it looked like a western/cowboy gun, a revolver, one that John Wayne the actor would have used," there is no indication anywhere in the statement that Rosario was in possession of the gun throughout the entire commission of the crime, or that he was holding it in plain sight. (Gov't Mot. *In Limine* And Mot. Pursuant To Rule 404(b), Ex. A.) The Government's reference to Rosario as "the guy with the gun" in both Taylor's April 9 and April 10, 2009 post-arrest statements assumes, without any support whatsoever, that Rosario did indeed possess a gun throughout the entire event that occurred on December 24, 2008—a necessary element that the Government must prove in its case-in-chief.

Accordingly, the Court directs the Government to submit a third redacted version of Taylor's post-arrest statements that eliminates any reference to Rosario as "the guy with the gun" and that replaces those references with neutral pronouns so that the statements viewed in isolation do not otherwise connect Rosario or Vasquez to the underlying crimes. *See Williams*, 936 F.2d at 700–01. Additionally, the third redaction must only identify Rosario and Vasquez in a manner that is supported by the statements themselves. These necessary redactions of Taylor's statements, followed by a proper limiting instruction, would address the concerns presented by *Bruton* and eliminate the need for severance. The Government may introduce tes-

---

2. The Second Redaction is attached as Exhibit A to the Government's Reply In Connection With Its Motions *In Limine* And Motions Pursuant To Rule 404(b), dated November 12, 2010 (the "Government's Reply").

timony with respect to Taylor's own participation in a second and subsequent pharmacy robbery in March 2009, but it may not elicit testimony drawn from Taylor's post-arrest statements to the effect that Taylor's co-defendants were the same individuals involved in that subsequent robbery.

Because the Second Redaction does not conform to the Court's specifications, the Government's request to admit it is DENIED with leave to submit an appropriate, revised redacted version of Taylor's post-arrest statements. Rosario's request to preclude the Government from introducing Taylor's redacted statements at trial is GRANTED in part, and his request that the defendants' trial be severed and Taylor be tried separately is DENIED.

## II. REDACTED POST–ARREST STATEMENTS OF ROSARIO

Like Taylor, Rosario also made statements to law enforcement officers after his arrest. At a hearing on May 6, 2010, this Court ruled that Rosario's post-arrest statements should not be suppressed. (*See* Supp. Hr'g Tr. 385, 388–89.) The Government now seeks to introduce a redacted version of Rosario's post-arrest statements both as inculpatory evidence and as circumstantial evidence of Rosario's consciousness of guilt.

Vasquez objects to the admission of Rosario's post-arrest statements, arguing that he would be prejudiced by: (1) Rosario's remark in which he stated "that was stupid of Taylor" when confronted by law enforcement with Taylor's inculpatory statement; (2) Rosario's denial of his own involvement in a subsequent pharmacy robbery in March 2009; and (3) Rosario's

statement regarding a previous arrest pursuant to which the police confiscated his firearms. Rosario also objects to the admission of his post-arrest statements, arguing that he would be prejudiced by his testimony (1) relating to his denial of his involvement in the subsequent pharmacy robbery and (2) concerning his statement about a previous arrest pursuant to which the police confiscated his firearms.

In response, the Government has indicated that it will not elicit testimony concerning Rosario's remark in which he stated "that was stupid of Taylor" when confronted by law enforcement with Taylor's inculpatory statement. In addition, the Government has agreed not to elicit testimony concerning Rosario's denial of his involvement in the second pharmacy robbery in March 2009.[3]

The Court finds that the Rosario Redacted Statement addresses the bulk of Rosario's and Vasquez's concerns, with the exception of the reference to Rosario's prior arrest pursuant to which the police confiscated his firearms. Thus, Rosario's statement concerning the confiscation of his firearms may also be admitted, especially if he opens the door and puts in contention that he lacked the opportunity to possess or access firearms or that his presence at the Pharmacy was for legitimate purposes. Furthermore, to the extent that this portion of Rosario's statement is ultimately admitted, the Court will provide a limiting instruction that Rosario's statement may be considered only as against Rosario. The Court finds that this instruction is sufficient to address Vasquez's concern that Rosario's statement will unfairly prejudice him because of the inference that Rosario has a tendency towards violence. Accordingly, the Government's request to admit the Rosario Re-

---

**3.** The Government's proposed redaction of Rosario's post-arrest statement is attached as Exhibit B to the Government's Reply (the "Rosario Redacted Statement").

dacted Statement is GRANTED in part and DENIED in part. Rosario's request to preclude the Government from introducing into evidence portions of his post-arrest statements regarding his previous gun possessions, and his denial of involvement in an alleged second pharmacy robbery is GRANTED in part and DENIED in part.

## III. EVIDENCE OF THE FALSENESS OF CERTAIN OF ROSARIO'S POST–ARREST STATEMENTS

■ The Government moves *in limine* to introduce evidence to establish that Rosario made false exculpatory statements concerning his presence at Lincoln Hospital during the time of the robbery. Rosario opposes the Government's motion, and he asks that the Court deny any Government request to charge the jury with respect to false exculpatory statements.

■ It is well-settled in the Second Circuit that evidence of a false exculpatory statement is admissible as circumstantial evidence of consciousness of guilt. *See, e.g., Henry v. Poole*, 409 F.3d 48, 65 (2d Cir.2005) ("It is axiomatic that exculpatory statements, when shown to be false, are circumstantial evidence of guilty consciousness and have independent probative force.") (*quoting United States v. Parness*, 503 F.2d 430, 438 (2d Cir.1974)); *United States v. Gaskin*, 364 F.3d 438, 462 (2d Cir.2004) (inference of criminal intent "was strengthened by [defendant's] post-arrest false exculpatory statement denying ownership or knowledge of the [cash]"); *United States v. Glenn*, 312 F.3d 58, 69 (2d Cir.2002) (false exculpatory statements may amount to "circumstantial evidence of consciousness of guilt and may strengthen inferences supplied by other pieces of evidence").

Here, the Government intends to elicit testimony that Rosario initially explained to law enforcement officers that he was in the hospital at the time of the robbery of the Pharmacy. But, later, after being confronted by a law enforcement agent indicating that records at Lincoln Hospital did not support his alibi, Rosario claimed that he was at his girlfriend's home if he was not still in the hospital on December 24, 2008. To prove the falsity of Rosario's post-arrest statements, the Government seeks to admit records from Lincoln Hospital and testimony from the custodian of records from Lincoln Hospital.

Rosario claims that his post-arrest statements were not deliberately false but, rather, a mistaken belief of his whereabouts on the night of the robbery. Rosario argues that a closer review of his original statement reveals that he was equivocal and unsure as to his location that day and therefore his statement is both unreliable and ambivalent as evidence of a deliberate false exculpatory statement. As such, Rosario contends that permitting the Government to admit collateral evidence and charging the jury with respect to false exculpatory statements will result in speculation and confusion by the jury. The Court disagrees.

As mentioned above, false exculpatory statements are admissible as circumstantial evidence of a consciousness of guilt in this Circuit. *See, e.g., Poole*, 409 F.3d at 65; *Gaskin*, 364 F.3d at 462; *Glenn*, 312 F.3d at 69; *Parness*, 503 F.2d at 438. The Court also finds a decision of the Tenth Circuit particularly instructive to the issue at hand. In *United States v. Davis*, 437 F.3d 989, 996 (10th Cir.2006), the defendant was charged with, among other things, bank robbery. The defendant initially stated to law enforcement that he was at work at the time of the robbery but later explained that he was at his girlfriend's house. At trial, the Government called a law enforcement witness to testify about the defendant's evolving account as

to his whereabouts. The Government also called another witness to prove that the defendant was not at work as he originally claimed at the time of the robbery. On appeal, the defendant claimed that his statement had evolved because he was "thinking out loud" when questioned and that he merely had trouble remembering his whereabouts. The defendant, thus, asserted that his statement did not rise to the level of a false alibi and that the district court erred in allowing the testimony, which was compounded by the jury instruction given on false exculpatory statements. The Tenth Circuit held that the district court properly admitted the testimony, finding that the "jury was entitled to weigh the evidence and decide whether [the defendant] fabricated a story as to his whereabouts on the date of the robbery, or just momentarily could not remember." *Id.* at 996.

Consistent with *Davis* and other precedent in this Circuit, the Court finds that Rosario's post-arrest statements regarding his location at the time of the robbery, as well as evidence proving the falsity of those statements, are admissible as circumstantial evidence of Rosario's consciousness of guilt. Defense counsel is free to argue at trial that Rosario's statements reflect uncertainty and a good faith mistaken understanding of his whereabouts rather than a deliberate falsehood. Ultimately, it will be up to the jury to decide whether or not the false exculpatory statements indicate a consciousness of guilt. *See id.* ("The instruction [to the jury about false exculpatory statements] 'leaves exclusively to the jury the question as to whether false exculpatory statements, if made, indicate consciousness of guilt, or nothing at all.'") (internal citations omitted). Accordingly, the Government's request to admit a redacted version of the post-arrest statements of Rosario

and to prove the falsity of certain of those post-arrest statements is GRANTED.

## IV. EVIDENCE CONCERNING THE DEVELOPMENT OF THE CRIMINAL RELATIONSHIP BETWEEN THE CW AND (a) TAYLOR AND (b) VASQUEZ

■ The Government seeks to admit evidence concerning the development of the criminal relationship between the CW and (a) Taylor and (b) Vasquez. Taylor objects to the admission of testimony that: (1) the CW drove Taylor into New York to make deliveries of illegally obtained prescription drugs and heroin; (2) the CW assisted Taylor in obtaining prescription drugs by forgery; (3) the CW obtained methadone and OxyContin for Taylor; (4) the CW obtained drugs for Taylor by passing fake prescriptions; (5) the CW delivered the illegally obtained pills to Taylor; and (6) the CW observed Taylor receive heroin to sell. Vasquez objects to the admission of testimony that (1) the CW drove with Vasquez when Taylor picked up heroin from his supplier at the British Petroleum gas station near the Hunts Point subway station in the Bronx, New York and (2) Vasquez occasionally drove her to pharmacies so she could assist Taylor in submitting fake prescriptions and obtaining illegal prescription drugs.

The Government asserts that the proffered evidence does not amount to evidence of "other crimes, wrongs, or acts" pursuant to Rule 404(b) because "it is inextricably intertwined with the evidence regarding the charged offense" and that "it is necessary to the complete the story of the crime [on] trial." *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir.1997) (quotation marks omitted); *see also United States v. Cilia*, No. 05 CR. 231, 2005 WL 1164153, *1 (S.D.N.Y. May 17, 2005) (same); *United States v. Frank*, 11 F.Supp.2d 314, 315 (S.D.N.Y.1998) (same).

The Second Circuit has held that uncharged acts are admissible as background evidence in a conspiracy case where they are used to: (i) explain the development of the illegal relationship between co-conspirators; (ii) explain the mutual trust that existed between co-conspirators; or (iii) complete the story of the offense charged. *See United States v. Mercado,* 573 F.3d 138, 141 (2d Cir.2009) (holding that prior bad acts were properly admitted to show the "development of the relationship between Defendant and [the cooperating witness], 'provid[ing] background for the events alleged in the indictment' and 'enabl[ing] the jury to understand the complete story of the crimes charged, or how the illegal relationship between coconspirators developed'") (*quoting United States v. Reifler,* 446 F.3d 65, 91–92 (2d Cir. 2006)); *United States v. Pascarella,* 84 F.3d 61, 73 (2d Cir.1996) (holding that uncharged acts are admissible "to show the background of a conspiracy or the development of a relationship of trust between the participants"); *United States v. Pipola,* 83 F.3d 556, 565 (2d Cir.1996) ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case.").

The Government also contends that the CW's uncharged criminal activity with Taylor and Vasquez is admissible as *Giglio* material for the CW. Pursuant to *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Government is required to disclose evidence potentially implicating the credibility of its witnesses. Accordingly, the Government submits that it should be permitted to elicit testimony regarding the CW's uncharged criminal activity so as "to avoid the appearance that it [is] concealing impeachment evidence

from the jury." *United States v. Coonan,* 938 F.2d 1553, 1561 (2d Cir.1991); *see also United States v. Louis,* 814 F.2d 852, 856 (2d Cir.1987).

Taylor and Vasquez claim that the "other crimes" testimony, and in particular the CW's testimony of prior heroin sales involving Taylor and Vasquez, does not arise "out of the same transaction or series of transaction" as the charged robbery; is not "inextricably intertwined" with the evidence of the charged robbery; and is not "necessary to complete the story" of the charged robbery. *Gonzalez,* 110 F.3d at 942. Further, both Taylor and Rosario assert that the testimony is not necessary to provide background to the development of the relationship between the CW and Taylor and Vasquez because (1) the defendants will not deny that they knew the CW and (2) the Government is able to inform the jury of the relationship between the defendants by eliciting testimony without the need to reference the prior heroin sales.

■ The Court finds that the admission of testimony regarding the CW's criminal relationship with Taylor and Vasquez is admissible to the extent it does not reference Taylor's or Vasquez's prior acts relating to the sale or use of heroin. Because the robbery of the Pharmacy did not involve heroin, any reference by the CW to Taylor's or Vasquez's use or sale of heroin would be unduly prejudicial. *See United States v. Morrison,* 153 F.3d 34, 37 (2d Cir.1998) ("Evidence of prior criminal conduct is admissible under [Rule 404(b)] if the evidence is relevant to an issue at trial other than the defendant's character, and if the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice.") (*citing Huddleston v. United States,* 485 U.S. 681, 685–86, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)). The

Government, however, may elicit testimony that: (1) the CW drove Taylor into New York to make deliveries of illegally obtained prescription drugs; (2) the CW assisted Taylor in obtaining prescription drugs by forgery; (3) the CW obtained methadone and OxyContin for Taylor; (4) the CW obtained drugs for Taylor by passing fake prescriptions; (5) the CW delivered the illegally obtained pills to Taylor; and (6) Vasquez occasionally drove the CW to pharmacies so the CW could assist Taylor in submitting fake prescriptions and obtaining illegal prescription drugs.

The Court finds that the evidence mentioned above is probative of the defendants' intent to participate in the charged conspiracy and their knowledge of the consequences of the conspiracy. *See Mercado*, 573 F.3d at 141; *Pascarella*, 84 F.3d at 73. There is also a "similarity or some connection" between the various acts in that the evidence relates to the illegal procurement of prescription drugs. *United States v. Garcia*, 291 F.3d 127, 137 (2d Cir.2002).

Although Taylor and Vasquez assert that they will not deny knowing the CW, rendering it unnecessary to elicit testimony regarding the CW's relationship with the defendants, the Court finds that the testimony is relevant and admissible to explain the *illegal* relationship between the co-conspirators and to complete the story of the crime charged. The testimony relating to the CW's involvement with Taylor and Vasquez in connection with acquiring and receiving illegal prescription drugs is highly probative of Taylor and Vasquez's joint participation in the robbery of the Pharmacy in which they are charged and is not substantially outweighed by the dangers of unfair prejudice. *See* Fed.R.Evid. 403; *United States v. Baez*, 349 F.3d 90, 93–94 (2d Cir.2003); *United States v. Roldan–Zapata*, 916 F.2d 795, 804 (2d Cir.

1990) (finding that evidence admitted was not unfairly prejudicial because it "did not involve conduct any more sensational or disturbing than crimes with which [the defendant was charged.]").

As described above, the Court finds that other than the CW's testimony relating to Taylor and Vasquez's use or sale of heroin, the proffered evidence involving the CW's criminal relationship with the defendants is admissible for several purposes other than to show the defendants' criminal propensity. To fulfill its *Giglio* obligations, the Government may elicit testimony regarding the CW's own involvement regarding the sale and use of heroin without referencing Taylor and Vasquez. Furthermore, to the extent Taylor and Vasquez believe that the CW's testimony is unreliable, the defendants are free to cross-examine the CW or otherwise challenge her credibility. Accordingly, the Government's request to admit evidence concerning the relationship between the CW and (a) Taylor and (b) Vasquez is GRANTED in part and DENIED in part.

## V. *MOTIONS PURSUANT TO RULE 404(b)*

Rule 404(b) provides that evidence of "other crimes, wrongs, or acts," while not admissible to prove bad character or propensity, may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." Fed.R.Evid. 404(b). Under the inclusionary approach taken by the Second Circuit, evidence of prior crimes or bad acts will be admissible if (1) offered for a purpose other than to show criminal propensity; (2) relevant to some disputed issue; and (3) the balancing test provided for in Rule 403 of the Federal Rules of Evidence ("Rule 403") is satisfied. *See United States v. Pitre*, 960 F.2d 1112, 1119 (2nd Cir.1992); *United States v. Lasanta*,

978 F.2d 1300, 1307 (2d Cir.1992). To be admissible pursuant to Rule 404(b), the similar act evidence must also relate to an issue disputed at trial. *See Garcia,* 291 F.3d at 136–37.

### A. *EVIDENCE OF ROSARIO'S PRIOR POSSESSION OF FIREARMS*

■ The Government seeks to admit evidence pursuant to Rule 404(b) that on or about July 3, 2002, when the police arrested Rosario in connection with another offense, Rosario possessed a loaded .22 caliber revolver and a loaded .380 pistol. The Government asserts that this evidence is admissible to (1) show Rosario's opportunity to possess and access firearms; (2) demonstrate Rosario's knowledge and intent to use a firearm during the robbery of the Pharmacy, including the absence of mistake or accident; and (3) rebut a defense that Rosario was merely present at the Pharmacy at the time of the robbery.

The Court finds that Rosario's prior gun possession is directly relevant to the issue of opportunity and absence of mistake and also admissible to demonstrate Rosario's ability to access such a weapon. *See United States v. Slaughter,* 248 Fed.Appx. 210, 212 (2d Cir.2007) (finding that at trial for possession of a firearm, admission of evidence relating to defendant's two prior incidents of possession of a semiautomatic handgun was relevant to show defendant's opportunity to be in possession of such firearms); *United States v. Robinson,* 560 F.2d 507, 513 (2d Cir.1977) (en banc) (finding that defendant's "possession of the gun was also admissible under [Rule 404(b)] on the independent ground that it tended to show he had the 'opportunity' to commit the bank robbery, since he had access to an instrument similar to that used to commit it"). Furthermore, the Court finds that the Government has fulfilled its obligation to identify "a similarity or some

connection between the prior and current acts" in noting that Rosario's prior arrest and conviction for possession of a firearm is for the same criminal conduct that the defendant is being charged with here. *Garcia,* 291 F.3d at 137. Finally, because the prior conviction did not involve conduct any more sensational or disturbing than the crime for which Rosario is charged, the Court finds that the introduction of Rosario's prior firearms possession conviction is not more prejudicial than probative. *See Pitre,* 960 F.2d at 1120.

Therefore, the Government's request to offer evidence of Rosario's prior firearms possession at trial, namely, (1) the testimony of the officer who arrested Rosario on July 3, 2002; (2) Rosario's plea allocution in connection with the firearms charges brought against him at that time; and (3) Rosario's post-arrest statement indicating that his firearms were confiscated when he was arrested on July 3, 2002 is GRANTED. The Court finds that this evidence would be especially appropriate if Rosario introduces as a defense that he lacked the opportunity to possess or access firearms, or that he was merely present at the Pharmacy for legitimate purposes.

### B. *VASQUEZ'S SALE OF AN OPIUM DERIVATIVE TO AN UNDERCOVER OFFICER*

■ The Government seeks to offer into evidence, pursuant to Rule 404(b), that on or about December 19, 2002, Vasquez attempted to make a street sale of an opium derivative to an undercover officer in the Bronx.

Vasquez objects to the introduction of evidence relating to his prior narcotics conviction. In particular, Vasquez asserts that the only similarity identified by the Government connecting the 2002 narcotics sale and the 2008 robbery is presence of an opiate-based narcotic. *See United States*

*v. Gordon,* 987 F.2d 902, 908 (2d Cir.1993) (finding that "the probative value of the proffered evidence depends largely on whether or not there is a close parallel between the crime charged and the acts shown") (internal quotation marks omitted); *United States v. Affjehei,* 869 F.2d 670, 674 (2d Cir.1989) (holding that evidence of another bad acts "should not be admitted to show knowledge unless the other act is 'sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge inference advocated by the proponent of the evidence'") (*quoting United States v. Peterson,* 808 F.2d 969, 974 (2d Cir.1987)). Vasquez argues that the prior sale of narcotics to an undercover officer involved heroin whereas in the case at bar the relevant drug is methadone. In response, the Government submits that unless Vasquez clearly expresses a decision not to dispute knowledge or intent to participate in the robbery of the Pharmacy to obtain prescription drugs, including the opium-derivative methadone, the prior drug sale is admissible to prove knowledge and intent under Rule 404(b).

The Court finds that there is not a sufficiently similar connection between Vasquez's prior narcotics conviction for sale of heroin and the current criminal conduct involving the robbery of the Pharmacy to obtain prescription drugs. The prior conviction involved the hand-to-hand sale of an individual amount of heroin to an undercover officer where the current Indictment charges a conspiracy to rob a pharmacy for prescription drugs. It appears that the only similarity between the two acts is that both involved an opium derivative. The Government has not indicated

that Vasquez's prior conviction involved the sale of prescription drugs or a robbery in order to obtain the heroin he sold in 2002. *See Garcia,* 291 F.3d at 137 (finding that the government may not invoke Rule 404(b), cart blanche, without identifying a commonality "between the two acts that makes the prior act relevant to establishing knowledge of the current act"). Furthermore, the Court finds that the prejudicial effect on the jury of admitting evidence relating to Vasquez's sale of heroin outweighs any marginal probative value of the prior conviction. *See id.* at 138–39. Therefore, the Government's request to admit evidence that Vasquez previously sold an opium derivative to an undercover officer is DENIED.

## C. *VASQUEZ'S POSSESSION OF A DRUG LEDGER AT THE TIME OF HIS ARREST*

■ The Government also seeks to introduce evidence, pursuant to Rule 404(b), that Vasquez possessed a drug ledger[4] concerning OxyContin and Oxycodone at the time of his arrest. The Government states that it intends to offer this evidence to demonstrate Vasquez's knowledge and intent to participate in the robbery of the Pharmacy as well to rebut a "mere presence" defense.

Vasquez objects, arguing that (1) the Government's effort to introduce the drug ledger is untimely and improper; (2) the Government has failed to proffer a connection between the robbery and ledger that would make the evidence relevant to the issue of knowledge; and (3) the request is unwarranted because possession of the ledger does not constitute a "crime" and,

---

**4.** The Government describes the drug ledger as a piece of paper that "contains seven entries for OxyContin and/or its generic substitute Oxycodone, the paper lists doses next to each entry, and the paper then includes numbers that either represent pills acquired or pills sold." (Government's Reply at 12–13.)

therefore, should not be admitted for relevancy purposes pursuant to Rule 404(b).

The Court finds Vasquez's objections unpersuasive. Vasquez has had more than three weeks' notice prior to trial that the Government intended to admit evidence regarding Rosario's possession of the drug ledger at the time of his arrest. The Court finds this length of time to provide more than ample notice. In fact, in its prior Decision and Order in this case, this Court ruled that it was reasonable for the Government to disclose at least two weeks before trial any prior bad acts of the defendants that the Government intended to introduce. *See United States v. Taylor*, 672 F.Supp.2d 539, 540 (S.D.N.Y.2009).

The Court further disagrees with Vasquez's notion that the Government has not sufficiently connected possession of the drug ledger to the robbery. Contrary to the evidence relating to Vasquez's prior narcotics sale, the ledger Vasquez possessed at the time of his arrest contained exactly the same prescription drugs, OxyContin and Oxycodone that were stolen from the Pharmacy on December 24, 2008. The fact that Vasquez possessed the drug ledger at the time of his arrest, subsequent to the robbery of the Pharmacy, is "of no moment" with respect to a Rule 404(b) analysis. *United States v. Germosen*, 139 F.3d 120, 128 (2d Cir.1998) (finding that "subsequent act" evidence may be admitted pursuant to Rule 404(b)).

Finally, the Court finds that the Government has provided sufficient information to establish the relevance and probative value relating to the drug ledger because it supports the inference that Vasquez knowingly or intentionally participated in a scheme to obtain OxyContin. *See Pitre*, 960 F.2d at 1119 (admitting evidence of prior bad act where there was no dispute that defendant was present at the arrest scene but an issue existed as to whether he knew,

agreed, and conspired to possess with intent to distribute).

For the reasons stated above, the Court finds that the probative value of the evidence is not substantially outweighed by the dangers of unfair prejudice. *See Huddleston*, 485 U.S. at 691, 108 S.Ct. 1496. Thus, the Government's request to admit evidence that Vasquez possessed a drug ledger concerning OxyContin and Oxycodone at the time of his arrest is GRANTED.

### D. *TAYLOR'S PARTICIPATION IN A SUBSEQUENT PHARMACY ROBBERY*

▮ The Government seeks to admit, pursuant to Rule 404(b), evidence that on or about March 2009, Taylor, with the assistance of others, participated in a second robbery of a pharmacy in or around 233rd Street and White Plains Road in the Bronx (the "Second Pharmacy") to demonstrate that Taylor had the requisite intent and knowledge to participate in the charged conspiracy.

Specifically, the Government moves to admit: (1) Taylor's post-arrest statement about the robbery of the Second Pharmacy; and (2) the testimony of the CW, who will testify, that at some point while she was incarcerated at Rikers Island, Taylor called her and informed her that he and others participated in a robbery of another pharmacy in the Bronx in early 2009. Taylor opposes the Government's request because he argues that the testimony of the CW related to the robbery of the Second Pharmacy is unreliable.

The Supreme Court in *Huddleston* recognized that when deciding whether to admit evidence pursuant to Rule 404(b), a court may consider "the strength of the evidence establishing the similar act" as one of the factors when conducting the

Rule 403 balancing test. 485 U.S. at 698 n. 6, 108 S.Ct. 1502. Taylor suggests that because the CW is a "drug addicted coconspirator turned cooperator," her credibility is suspect. (Def's Mem. Opposing Gov't *In Limine* Mot. at 5.) Therefore, the Court should exercise its gate-keeping authority and deny the Government's request to admit evidence related to the robbery of the Second Pharmacy. (*Id.* at 6.)

The Government has indicated that evidence relating to Taylor's involvement in the robbery of the Second Pharmacy will come not only from the testimony of the CW, but also from Taylor's post-arrest statements, which indicates that Taylor robbed a second pharmacy in March 2009. The Court finds that the evidence relating to the Second Pharmacy is not unreliable, especially given that Taylor's own statements are consistent with the proffered testimony of the CW. Further, Taylor is fully able to cross-examine the CW or otherwise challenge her credibility.

Here, knowledge, intent, or absence of mistake will likely be at issue through Taylor's mere presence defense. *See United States v. Bruno,* 873 F.2d 555, 561–62 (2d Cir.1989) ("The government was entitled to prove [the defendant's] intent pursuant to [Rule 404(b)] because he had placed his intent in issue by claiming that he was 'merely present' during the [crime]."). In addition, given the similarity between the two acts—both involved a conspiracy as well as a robbery of a pharmacy—the Court finds that the evidence related to Taylor's participation in the robbery of the Second Pharmacy is admissible pursuant to Rule 404(b).

The Court further finds that the evidence related to the robbery of the Second Pharmacy is not more prejudicial than probative because it does not involve conduct any more sensational or disturbing than the crime for which Taylor is charged.

*See Pitre,* 960 F.2d at 1120. Consistent with *Germosen,* it is of "no moment," as far as Rule 404(b) is concerned, that the "other act," the robbery of the Second Pharmacy, occurred after the charged crime. 139 F.3d at 128. Accordingly, the Government's motion to admit evidence that Taylor participated in a robbery of the Second Pharmacy is GRANTED.

## VI.  *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the Government's Motions *In Limine* and Motions Pursuant to Rule 404(b) dated October 29, 2010 (Docket No. 41) is GRANTED in part and DENIED in part; and it is further,

**ORDERED** that defendant Antonio Rosario's Motions *In Limine* dated November 8, 2010 (Docket No. 47) is GRANTED in part and DENIED in part.

**SO ORDERED.**